By the Court.
We expressed our opinions incidentally in Meade’s lessee v. Haymaker et al. that actual settlements were requisite in the case of warrants issued under the act of 9th March 1796. The present question was not immediately before the court, but the case naturally led to it. We mean not however, now to give any decided opinion on that point, as we are not possessed of the minutes of the house of representatives or of the senate, which have been referred to in the argument.
Admitting that the conditions of actual settlement are obligatory on the warrants issued, under that act, to David Meade and others claiming a credit under him, it is contended, that by the words of the 9th section of the act of 3d April 1792, in default of settlement and residence the commonwealth may issue new warrants to other actual settlers for the said lands, &c. and that these expressions imply a right to settle on such lands whereon default has been made, previous. to such new warrants being issued. But will not the intention of the legislature be better fulfilled, and all the words of the clause receive their full operation, by construing actual settlers to mean other persons, who are desirous to settle and improve the lands ? If they must of necessity be construed to mean persons then- cultivating the land, then none but such characters would be entitled to vacating warrants, in exclusion of the rest of mankind, however desirous and ready to make settlements. Besides if we regard the grammatical construction, and adopt the sense insisted on by the defendant’s counsel, then those words must be taken as referring to such actual residence and settlement, mentioned two lines before, comprehending fencing, clearing, cultivating, &c. erecting the messuage, &c., and residing thereon five years. Neither of these Constructions, it is presumed, will be contended *[278 for, The first opposes every ground of that just equality, *278 which ought to prevail amongst the citizens of a free government ; the last is felo de se of the object endeavoured to be accomplished, and is moreover repugnant to the subsequent words, and so as often as defaults shall be made, for the time and in the manner aforesaid, &c., whijCh presupposes defaults on new grants. The framers of thedaw wisely extended, in order to guard against confusion, disorders and uncertainty, that the constituted public authorities of. the state, by the medium of the land office, should determine respecting the defaults alledged to have been committed by the first warrantees. The opinion delivered by the court in Morris’s lessee v. Neighman and Shriner was consonant thereto, and was delivered in direct terms, that no individuals could take advantage of the breach of the condition, unless through the instrumentality of the commonwealth’s officers, by granting new warrants in a specified form. This was likewise recognized by the majority of the judges, in the late contested case of the mandamus, between the Holland Land Company and Tench Cox, the secretary of the land office. We see no reason at present, to recede from the opinion which we have deliberately formed, but are still open to conviction. We feel and know, that this point requires to be finally settled, and that the peace and safety of the country are involved in an early and mature decision. We therefore invite the defendant’s counsel to take a bill of exceptions, move for a new trial, or to consider the question as a point reserved for further discussion. In the mean while, the motion for a nonsuit is denied.
The defendant’s counsel then offered to shew in evidence, that William Gregg and John Gregg, two brothers, seated themselves down on French Creek, in this quarter of the country in the year 1789. They continued there that summer, and each designated for himself a tract of land, supposed to contain 400 acres; William’s claim was up French Creek, and John’s below it. A small cabin was built on William’s tract wherein they resided. They then returned' into the inhabited parts of the country and came back in the spring of 1790, built a large house on John’s tract, and raised 100 bushels of corn and 500 bushels of potatoes on the lands that summer; John Gregg returned to Susquehannah that fall, but his brother William continued to reside in the larger cabin that fall and the ensuing winter, and was killed by the Indians, on the lands, in the spring of 1791. The defendant afterwards intermarried with the widow of William Gregg, and holds the lands in controversy, in her right, * 1 *and under William M. Adams, the guardian of his minor '9-i children.
This evidence was opposed by the plaintiff’s counsel, on the ground of its not proving a settlement recognized by the law. By section 6, of the law of 12 March 1784, no improvement, office right or claim, under any Indian nation, or the late proprietaries, within the lands appropriated for the redemption of *279 the depreciation certificates, or donations to the officers and soldiers in the continental army, shall be valid, but the same shall be null and void to all intents and purposes whatsoever. 2 Dali, sta. Laws 90. By the 2d section of the act of 1st April 1784, the land office, which was shut in 1776, was first opened from the 1st July 1784, for obtaining new rights to lands already purchased from the Indians ; and the 8th section excepts the depreciation and donation lands. Ib. 201. The same exception is again made by the act of 21st December 1784, § 6, lb. 234. The law of 3d April 1792, first gave a right of settlement to these lands. The words of the 2d section are, the lands north and west of the rivers Ohio and Allegheny and Conewango creek, are hereby offered for sale to persons who will cultivate, improve and settle the same. And the 5th section which directs, that the deputy surveyor shall not-survey the lands on warrants, that may have been actually settled and improved prior to the date of the entry of such warrant with the deputy surveyor of the district, except for the owner of such settlement and improvement, can only mean lands settled and improved after passing of the law.
Referred to in i Watts 82; 5 Watts 431.
Messrs. Ross, Woods and Sample, pro quer.
Messrs. Collins, Foster, Baldwin and Ayres, pro def.
By the Court. The present case interests our feelings, but we must endeavour to find out the true meaning of the law and adhere to it firmly. The grammatical construction of the act is clear, and puts all the people of the country on an equal footing. The words of the act are in the future sense ; and the preamble offering encouragement to actual settlers, must naturally refer to those who shall settle, and not to those who had theretofore settled. We are bound by the expressions, and our uniform decisions have been, that proofs of settlement under this law should be confined to settlements made after it was passed. But if the defendant’s counsel are dissatisfied with this opinion, we again invite them to put it in a train, to go before another tribunal.
It was then agreed, that a verdict should pass for the plaintiff; on the pronouncing whereof, general Wilkins generously agreed *to convey one moiety of the lands in question to the minor children of the aforesaid William Gregg. [*280