1806.

*Pittsburg,*
*Saturday,*
September
6th.

## Lessee of HAZARD *against* LOWRY.

The proviso
in the ninth
section of
the act of
3d April
1792, which
excuses a
settlement
in case of
prevention
by the ene-
my, also ex-
cuses a sur-
vey. Two
years after
the pacifica-
tion by Gene-
ral Wayne's
treaty is a
reasonable
time for
making a
settlement
which has
been preven-
ted by the
enemy.

THIS was an ejectment for land lying north and west of the rivers *Ohio* and *Allegheny* and *Conewango* creek. The warrant to the lessor of the plaintiff bore date the 13th of *April* 1792, and called for 400 acres " adjoining land this day granted to *Walter* " *Stewart.*" At the time the warrant was taken out, and until the treaty of General *Wayne,* which was made at *Meadville* on the 3d of August 1795, and ratified on 23d of *December* following, there was an Indian war on the frontiers of *Pennsylvania;* and the frequent irruptions of the enemy into the quarter of country to which the warrant applied, have been repeatedly recognised by the courts of this state as excusing during that period the settlement required by the act of 3d *April* 1792; indeed until the spring of 1796 there was hardly an instance of any person, except a few intrepid and perhaps rash adventurers, who attempted to make a footing in that country. On the 17th *June* 1794, more than two years after the date of the warrant, a survey was made upon it by *Reese,* the deputy surveyor of the district, according to the description in the warrant " adjoin- " ing *Walter Stewart;*" but no entry was made at that time by the lessor of the plaintiff, or by any one under him, with a view to settlement. The defendant entered on the land in *July* 1795; and the plaintiff brought his ejectment to *September* term 1797, more than a year and a day after Gen. *Wayne's* treaty, but less than two years. The demise was laid as of the 1st *October* 1796.

The whole case turned upon the construction of the 9th section of the act of the 3d *April* 1792, which is in the following terms. " No warrant or survey to be issued or made in pursu- " ance of this act for lands lying north and west of the rivers *Ohio* " and *Allegheny* and *Conewango* creek, shall vest any title in or " to the lands therein mentioned, unless the grantee has prior " to the date of such warrant made or caused to be made, or " shall *within the space of two years next after the date of the* " *same* make or cause to be made an actual settlement thereon, " by clearing, fencing and cultivating at least two acres for " every hundred acres contained in one survey, erecting thereon " a messuage for the habitation of man, and residing or causing " a family to reside thereon for the space of five years next fol-

" lowing his first settling the same, if he or she shall so long " live; and in default of such actual settlement and residence, it " shall and .may be lawful to and for this Commonwealth to " issue new warrants to *other actual settlers* for the said lands " or any part thereof, reciting the original warrants, and that " actual settlements and residence have not been made in pur- " suance thereof; and so as often as defaults shall be made, for " the time and in the manner aforesaid; which new grants shall " be under and subject to all and every the regulations contain- " ed in this act. *Provided*, that if any such actual settler, or any " grantee in any such original or succeeding warrant, shall by " force of arms of the enemies of the *United States* be *prevented* " from making such actual settlement, or be driven therefrom, " and shall *persist* in his endeavours to make such actual settle- " ment as aforesaid, then in either case, he and his heirs shall " be entitled to have and to hold the said lands, in the same " manner as if the actual settlement had been made and " continued."

At the trial of the cause in *November* 1802 in the Circuit Court of Allegheny county, a verdict was taken for the plaintiff, subject to the opinion of the court upon three points reserved; and which were now the ground of appeal, as the decision of the court below was in favour of the plaintiff upon all of them. 1. Whether, as no *survey* was made upon the plaintiff's warrant within two years next after the date, any survey thereon made afterwards could vest a title in the warrantee. 2. Whether any title vests in a warrantee under the act of 3d *April* 1792, un- less he has made an actual settlement before the date of the warrant, or within two years next afterwards. 3. Whether, supposing the plaintiff to have been prevented during the two years after the date of his warrant from making an actual settle- ment, he had proceeded to make it within a *reasonable* time after the prevention ceased.

*A. W. Foster* for the defendant contended on the *first* point, that as the warrant in this case was not of a nature to ascertain the land without a survey, and as the ninth section of the act of 3d *April* 1792 required, in order to vest a title, that within two years from the date of the warrant certain acts should be per- formed upon or with reference to a specific ascertained tract of land, it followed that there never had been even an incep-

tion of title in the plaintiff. The warrantee did not know within the two years where his land was; he of course had it not in his power to enter or to take any step with reference to it. In fact he did not lay claim to any land until the time had expired. A special warrant, which describes the land, attaches from the time it is entered with the deputy surveyor; but a general warrant like this, if it is of any avail under the act of 1792 which in its *third* section demands a particular description of the lands in every application, attaches only from the time of survey, unless a special entry descriptive of the land is made at the time of delivery to the surveyor. Whatever may have been the situation of the country, the plaintiff must make out his title according to the *ninth* section. The *proviso* at most dispenses with actual settlement only in the event of a *prevention* by the enemies of the *United States;* but the plaintiff never had a survey which fixed a particular body of land whereon he had a right to enter and settle; and it is therefore absurd to say that he was *prevented* by the enemy from settling, or that there ever was a tract of land which he could *persist* in his endeavours to settle. A survey is a condition precedent to the operation of the proviso; for until that is made, there is no object for settlement, prevention, and persistence.

The defendant entered then, after the plaintiff forfeited his right. He became an actual settler, as he might well be without a vacating warrant; for the 9th section is explicit, that in case of forfeiture new warrants shall issue to other *actual settlers*, which implies a settlement before the new warrant is issued; and having entered upon a right adverse to the plaintiff, his settlement cannot enure to the plaintiff's use.

The *second* point was not pressed.

On the *third* point it was contended that the decision of the Supreme Court of the *United States* in *Heidekoper's Lessee* v. *Douglass* (a) was not binding upon the courts of this state, as it was not pronounced in a cause *exclusively* of Federal jurisdiction; the point was therefore to be settled by the decisions in *Pennsylvania*, which established the necessity of an actual settlement after the prevention had ceased. The question in the present instance was as to the time. All apprehension of danger ceased at least as early as the ratification of General *Wayne's* treaty in *December* 1795, and more than a year and a half elap-

(a) 4 *Dall.* 392.

sed before the plaintiff made an attempt to proceed under his survey. The common law has limited a year and a day to be a legal and convenient time for a great variety of purposes, especially in the case of continual claim, to which this renewal of settlement is in many respects analogous. *Co. Litt.* 254. *b. sec.* 422,—3. *Runn. on Eject.* 143.; and as a general rule to which this and all other cases must bend, it would manifestly interfere with the main design of the legislature to settle this frontier country, if a longer time were allowed. The actual settler is entitled to a credit for every day he has resided on the tract, against the five years' residence required by the law; and as in many cases an actual settlement was commenced before prevention, he should be allowed as a general rule only a medium of the whole time for completing his actual settlement after the prevention was at an end.

*Ross* for the plaintiff. The first point states nothing in relation to the entry of the warrant with the deputy surveyor; but submits the naked question, whether the survey, not having been made within two years, vested any title in the plaintiff; or in other words, inasmuch as the *proviso* dispenses completely with settlement where it is prevented by the enemy, whether it does not also for the same cause dispense with the survey. The question answers itself. The warrantee is excused from entering to settle, because it would be monstrous to insist upon it at the hazard of his life; and can it be argued that although the danger was precisely the same, there should nevertheless be an entry to survey? Besides, the plaintiff could not compel a survey. It could be made only by the public officer; and both the courts of this state and of the union have held that he is excusable in refusing to survey *flagrante bello.* The argument therefore proceeds upon a double injustice to the warrantee, by making him suffer for not causing that to be done which the spirit of the *proviso* excuses, and then by imputing to him the omission of a public officer whom the law in this very particular justifies. The endeavour of the plaintiff is, however, very obvious from the survey having been made in *June* 1794, during the period of hostility; and as the defendant entered in 1795, the kind of warrant taken by the plaintiff is legalized from the time of survey, by the act of 22d *April* 1794. 3 *St. Laws* 581.

Vol. I.                                   Y

*1806.*

*Lessee*
of
Hazard
*v.*
Lowry.

1806.

Lessee
of
HAZARD
v.
LOWRY.

The *second* point has been settled by this court at *Sunbury*. It cannot indeed be seriously urged that an actual settlement must be made within the two years, without rejecting almost the only plain meaning which the *proviso* affords. The acts of Assembly for raising troops, prove incontestibly a prevention by the enemy; and nothing more is necessary to postpone the effect of the whole enacting clause, even from the moment the warrant issues.

On the *third* point there are two positions for the plaintiff, one as it respects the defendant, the other the Commonwealth. As it respects the defendant, he was a wrong doer; he entered before the treaty, while most clearly the plaintiff's right was in force; and he shall never be permitted to object to our claim, a defect of which, if it exists, he himself was the cause. As it respects the commonwealth, even the common law rule is suffi-cient; for our demise is laid on the 1st *October* 1796; not a year after the *ratification* of the treaty, which is the point of time at which a settlement might have been commenced with safety. *Morris's Lessee* v. *Neighman.* (a) But the rule which has been adopted at *Sunbury*, and which is the only rational rule that can be adopted upon the subject is this, that as the 9th section al-lows two years for clearing, fencing, building &c. and as the enemy prevented all settlement until the ratification of the treaty, two years after that date is a *reasonable* time for per-forming the same duty.

TILGHMAN, C. J. delivered the opinion of the court. This cause comes before the Court upon an appeal from the Circuit Court of *Allegheny* county. The ejectment was brought to *September* 1797, and tried *November* 1802, when a verdict was taken for the plaintiff, by agreement, subject to the opinion of the Court upon the points to be reserved. These points are spe-cified in the record, and are now the subject of our considera-tion. The counsel for the defendant has argued the cause on very extensive grounds, and raised many points not necessary to be determined in deciding the questions before us. The weight of business resting upon this court, will mak · us cau-tious how we express our opinions on matters foreign from the

(a) 4 *Dall.* 209.

case before us. I shall therefore confine myself to the reserved
points stated on the record, without intimating any opinion on
any other question.

The *first* and *second* points may be considered under one
view. They, as well as the third point, arise out of the act of 3d
*April* 1792, and principally out of the 9th section of that act.

Although this section is expressed with such obscurity as to
have occasioned great diversity of opinion among men of the
first abilities, yet there are some points concerning which there
can be little doubt. One of these points is, that if the settlement
required by law is prevented by force of arms of the enemies of
the *United States*, the interest of the grantee does not revert to
the commonwealth, although the settlement is not made within
two years from the date of the warrant. Now in the case before
us, the warrant bears date the 13th *April* 1792, and it is noto-
rious, and not denied by the defendant, that for more than two
years from that time there was open war with the Indians,
which rendered it dangerous to attempt a settlement of the land
in dispute. It may be safely affirmed, from the public acts of the
commonwealth in granting money and raising troops for the
protection of the country, that this state of danger existed until
the pacification by General *Wayne's* treaty with the Indians. If
the danger arising from this war excused the warrantee from
making a settlement, so did it likewise excuse the deputy sur-
veyor from surveying the land. The counsel for the defendant
contends, that inasmuch as the warrant does not describe the
land except as " adjoining a tract granted to *Walter Stewart*,"
which had not been surveyed, the warrantee could not know
where it lay until it was surveyed, and of consequence he could
not be prevented from settling what he had no right to enter on.
But this argument has more of refinement than of solidity.
When the warrantee paid his money and took out his warrant,
his title commenced; he obtained a right to reduce the land to
a certainty by survey, and he shall not be deprived of that right
by the event of war. There is nothing in the act which autho-
rizes such a position. On the contrary, the *proviso* in the 9th
section which excuses the settlement, does virtually excuse the
survey.

The *third* point for our decision supposes that the warrantee
was prevented by the enemy from making a settlement for two
years from the date of the warrant; but the defendant contends

1806.

Lessee
of
HAZARD
v.
LOWRY.

that a settlement was not made within a *reasonable time* after the prevention ceased. It was decided by my three brethren at the special Court at *Sunbury*, (a) when I had not the honour of a seat on this bench, that a *reasonable* time for such settlement should be allowed; and to that opinion I subscribe. The question then is, what is that reasonable time? The law has not fixed it. But as two years are allowed for building, clearing, and fencing, in case the country had been in a state of peace, it seems most consonant to the spirit of the law that where war existed from the date of the warrant for two succeeding years, not less than two years should be allowed from the pacification by the treaty by which the war was concluded. I understand this to have been the opinion of the Judges of this court, and I see nothing which should induce us to depart from it. The defendant then, having entered during the time that the lessor of the plaintiff had a right to hold the land for the purpose of making a settlement, was a wrong doer, and subject to be removed either by an entry or by ejectment. It follows that the plaintiff was entitled to judgment in the Circuit Court, and that judgment must now be affirmed.

Judgment affirmed.

(a) 4 <i>Dall.</i> 237.

---

*Pittsburg,*
*Saturday,*
September
13th.
If a verdict
be found for
plaintiff, and
a motion is
made in arrest of judgment, during
the pendency of which
the plaintiff
dies, judgment may be
entered as of
a term after
the verdict