# Lessee of Jonathan Jones *against* William Anderson and Matthew Anderson.

The adverse possession of an actual settler, within the time allowed to the warrantee to make his settlement is *ipso facto*, a prevention. The entry of an actual settler is not congeable on a supposed default without a vacating warrant or application, which must be taken out before suit brought, otherwise they cannot be admitted in evidence on the trial.

APPEAL from the decision of the Circuit Court of Mercer county. The cause was tried before the chief justice on the 3d October 1807.

The plaintiff claimed under a warrant in the name of his lessor for 400 acres of land, north and west of the river Ohio, on the waters of Big Beaver creek, dated 21st April 1794 ; upon which a survey was made of 400 acres and 16 perches by Benjamin Stokely, deputy surveyor, on the 25th May 1795, including the lands in question. He further gave in evidence, that William M'Millan had built a cabin on the land in May 1796, as an actual settler, and that a possession adverse to the warrant right had continued ever since ; but he gave no evidence of any entry or claim by his lessor, or any other person, made of the defendants or those under whom they held, until the commencement of this ejectment on the 15th February 1802 ; or that any force or threats were used, which might deter or prevent them from making an actual settlement on the land.

The defendants offered in evidence an application without date, (but which was agreed to have been made after 1802,) in the name of William Anderson, for a vacating warrant, accompanied by affidavits, that the settlement was commenced in May 1796, interest to be computed from the 1st May 1796 ; and likewise offered to prove, that the settlement had begun in 1795, and was prosecuted in 1796. But the chief justice rejected them ; because the intention of the act of 3d April 1804, (6 St. Laws 511,) evidently was, to put the application for a vacating warrant on the same footing with the vacating warrant itself ; and inasmuch as the latter could not be given in evidence if obtained after the suit brought, neither could the former be re-

[Jones's Lessee *v.* Anderson.]

ceived. And as to the second point, it had often been decided, that a party having fixed the commencement of his improvement by his application to the land office, was concluded thereby, and could not afterwards he permitted to carry it further back.

The chief justice charged the jury, that as the defendants, or *those under whom they claimed had entered into pos- [*570 session of the premises within the time allowed by law for the making of his settlement, and had obtained no vacating warrant or entered an application in lieu thereof, previous to the commencement of the suit, the plaintiff was intitled to recover; but the jury found for the defendants. On motion, a new trial was awarded; and thereupon this appeal was brought.

Messrs. S. B. Foster and A. W. Foster, now argued in support of the appeal. We wish not to unhinge any decision of the Supreme Court, nor any point fairly deducible from their decisions. But the opinion of any single judge is examinable, and even of the court collectively, when their resolutions did not proceed on the very point before them. Two sets of purchasers were contemplated by the act of 3d April 1792, 3 St. Laws 209. But the law regarded more the settlement of the country, than the payment of money into the state coffers. It was intended that the law should carry itself through, by its own operation. Under the 9th section in default of actual settlement and residence by warrantees, new warrants might be granted to other actual settlers. And under the 10th section actual settlers not applying for warrants for ten years, other warrants might issue. The words of the law are direct and plain, that the commonwealth might lawfully issue new warrants to other actual settlers, which evidently implies a right in them to take possession on the default of warrantees. But all doubt is removed by the 2d section of the act of 22d April 1794, 3 Dall. St. Laws 581, which provides, that no warrant should issue after 15th June then next, "except in favour of persons claiming the same by " virtue of some settlement and improvement being made there- " upon."

It will not be denied, that a plaintiff in ejectment can only succeed by the goodness of his own title. How then has this plaintiff intitled himself? The actual settlement and residence on these lands, was a condition precedent on the part of Jones, before his complete title vested.

If the condition was subsequent, the proviso in the 9th section was wholly unnecessary.

Conditions precedent, must be strictly performed, to make the state vest; and though become impossible even by the act of God, the estate will not vest. 4 Dall. 242. If one contract, he must do what in him lies, to perform his contract; and nothing else will excuse him. Instead of shewing force or threats made use of by the defendants, or those under whom they claim, deterring Jones from making his settlement and residence, it is not

[Jones's Lessee *v.* Anderson.]

insinuated, that he ever made any demand of the possession of *any of them, or set up any claim thereto, until he brought this ejectment.   The law might have been in his favour, if he had commenced his suit, while he had right in him to the exclusive possession.   But that time is long past.   The proviso in the 9th section of the act of 3d April 1792, only goes to a prevention by force of arms of the enemies of the United States and not of individuals.   But if the latter should be held to be within the meaning of the legislature, it surely ought to be fully proved, and submitted as a fact to be judged of by the jury, whether the warrantee was really obstructed and deterred from taking possession.   There can be no privity between the actual settler and warrantee, so as to make the settlement and residence of the former enure to the benefit of the latter.

*571]

Judge WASHINGTON asserted in Heidekopper *v.* Douglass, that a settler might enter on lands granted by warrant, where the conditions of actual settlement and residence had not been complied with, without taking out a vacating warrant.   But admitting that the entry of the defendants was illegal in the first instance, the defect was cured by the provisions of the act of 3d April 1804. 6 St. Laws 511.   It is admitted to have been decided in the state Circuit Courts, that the commonwealth only could take advantage of the condition broken.   But here there was no estate to forfeit, the interest of the warrantee being wholly extinguished and gone.   In construing a law, the pre-existing mischief and remedy are to be duly considered.   It was well known, that a multitude of suits had been brought by warrantees, and the legislature was not ignorant of the opinions delivered in courts of justice, as to entries for conditions broken. The law was therefore intended to prevent litigation and circuity of action, though the words of it are not closely logical.   The applications of actual settlers are made equivalent to vacating warrants on the trial of all suits between warrantees and actual settlers, brought or to be brought.   The expressions refer to all cases of application made before the trial of the suits, and the expressions, that "the actual settlers shall be permitted to "plead and make proof of his improvement and residence, as "fully and with equal force and effect as if such settler had ob-"tained a vacating warrant," clearly shew, that actual settlers shall be allowed to go into a full defence, when they have entered their applications.   It is a substantive independent clause in their favour ; but the construction set up on the part of the plaintiff defeats the plain meaning of the law.   It was objected on the trial, that our construction changes the rules of evidence. But an alteration of the law necessarily must vary those rules. It was further said, that we place a person without a warrant in a better situation, than if he had a warrant.   It is not so.   Both are placed on the same footing.   The privilege of a full defence is given to the party as an actual settler ; and the words are, " on the trial of all suits brought or to be brought," &c.

[Jones's Lessee *v.* Anderson.]

*Messrs. Semple and Baldwin answered on the part of the plaintiff. We have been taught to consider the adjudications of this court, after mature consideration, as binding and conclusive on the questions determined by them. Repeated decisions of the judges of this court, at *Nisi Prius*, in the Circuit Courts and in Bank, have fully established the principle, that a warrantee is legally entitled to two years after the ratification of general Wayne's treaty with the Indians, which took place on the 23d December 1797, in order to make his settlement, and that no other person could lawfully enter upon the lands so granted. Here the defendants, or those under whom they hold, illegally took possession of the premises in May 1796, and withheld them from Jones, and has been gravely contended, that their tortious entry is mellowed into right! If it was even admitted, that actual settlers might enter for the condition broken by the warrantees, on their default, this is not that case; because the warrantee was in no default until the 23d December 1797, when Indian hostilities had ceased, and peace was established. But the law is not so. The only reasonable construction which can be put on the words of the 9th section of the act of the 3d April 1792, of granting warrants to other actual settlers, is to other persons who should be desirous of becoming actual settlers; and so have been the decisions. Why was the mode of forfeiture prescribed by the legislature on the defaults of warrantees, if individuals could assume to themselves the right of judging in those instances wherein they were immediately interested? It is true, the act of 22d April 1794, was intended to favour settlers in general, but not to affect the rights which grew out of the act of April 1792. The 4th section of the law of 2d April 1802, shut up the land office as to granting new warrants for lands, for which warrants had before issued, with certain provisions. 5 St. Laws 159.

The actual settler, who has unlawfully taken possession of lands paid for by the warrantee, before any default made by him, offends against every principle of moral rectitude, when he urges his own injustice as a bar to the warrantee's recovery. His adverse possession is *ipso facto* a prevention of the warrantee from fulfilling the conditions of his grant. A demand of him to deliver up possession would be an idle ceremony, unattended with any good effects, perhaps followed by a breach of the peace. The ravages of an Indian enemy are evanescent; but *the adherence of an actual settler to the soil is permanent *573] and continued.

The act of 3d April 1804, will not aid the defendants. This very point was determined in the same manner by Mr. Justice YEATES, at a Circuit Court in Beaver county, in September, 1806. The observations of the chief justice when this point was argued on the trial are unanswerable. "The main object of the act "of 3d April 1804, was to give actual settlers all the benefit of

"a vacating warrant, without the expense of it.   For this pur-
"pose, applications, provided they had been filed before, or should
"be filed within two years after the passing of the act, confer
"all the advantages of a vacating warrant.   Having declared
"this, the law goes on to say, 'that on the trial of all suits
"brought or to be brought between warrantees and actual set-
"tlers, the actual settlers shall be permitted to plead and prove
"their improvement and residence, as fully and with equal force
"and effect, as if they had obtained a vacating warrant.'   This
"last part must be considered as connected with the former part
"of the law, and as authorizing the settler to prove his settle-
"ment in case of an application, in the same manner as if he
"had obtained a warrant.   Unless it is limited to this construc-
"tion, the part respecting applications is useless ; because no
"one would make an application if he could have all the benefit
"of his settlement without it.   Besides, the application is limit-
"ed to two years ; and unless the evidence is confined to cases
"of applications, the settlers would have a stronger case with-
"out an application, than with one, which is a manifest absurd-
"ity.   Besides, the construction contended for by the defendants,
"would make the legislature guilty of partiality and injustice,
"which I will not suppose.   It would have been partial and un-
"just to alter the general principles of evidence in this particu-
"lar instance, and affect suits then depending by an *ex post facto*
"law.   I construe it thus : whether the suit has been brought
"or shall be brought, if your application is filed, you shall have
"the same benefit, but not greater than if you had obtained a
"warrant, that is to say, if your application has been filed before
"suit brought, you shall avail yourself of it in this suit ; but if
"not until after such suit brought, you shall not avail yourself
"of it in this suit, though you may in another suit to be brought
"by yourself.   It is probable, that in many suits depending at
"the time the act was passed, affidavits had been filed before
"the commencement of them, by virtue of the act of 2d April
"1802, and this consideration throws light on the construction
"of the law in question.   This construction satisfies every part
"of the law, and gives to the legislature that dignity and sense
"of justice which we hope will for ever invest them.   I am
"*therefore of opinion, that the application and vacating
*574]   "warrant, obtained since bringing this suit, will not avail
"the defendants.   Of course, they stand within the principle
"decided by the Supreme Court, in the case of the Common-
"wealth *v.* Tench Coxe, in the light of trespassers, because they
"entered before they obtained a vacating warrant."

YEATES, J. delivered the opinion of himself, and of Mr. Jus-
tice SMITH, as follows :

This is an appeal from the decision of the Circuit Court of
Mercer county, wherein a verdict having passed for the defend-

[Jones's Lessee v. Anderson.]

ants against the charge of the court, the chief justice awarded a new trial.

The merits of the case lie within a narrow compass. A war-rant dated 21st April 1794, issued under the act of 3d April 1792, to the lessor of the plaintiff, for 400 acres of land, on the waters of Big Beaver creek, upon which a survey was duly made on the 25th May 1795, and afterwards returned, comprehending the premises in dispute. In May 1796, a cabin was built on this land by an actual settler, adverse to the warrant right, and a possession in consequence thereof has been continued, under which the defendants deduce their title. This ejectment was commenced on the 15th February 1802, and William Anderson, one of the defendants, applied to the secretary of the land office for a vacating warrant subsequent thereto ; but his application was not permitted to be read in evidence to the jury. No other facts were disclosed on the trial.

The defendants have objected the want of a settlement and improvement on the part of Jonathan Jones, and have insisted that no entry or claim was made by him within the time limited for making thereof ; and that no force or threats were used by the defendants, or any person under whom they claim, preventing him from making his settlement agreeably to the law. Was it then necessary that the plaintiff should shew this in evidence, before he was entitled to recover ?

In the case of the Commonwealth v. Tench Coxe, the majority of the court declared, that it did not lie in the mouths of men, who, supposing the warrants to be dead, by reason of the settlements not being made within two years after their dates, had taken possession of the lands, or a part thereof, to object the want of settlement and improvement on the part of the warrantee. 4 Dall. 205. So on the feigned issue at Sunbury, it was agreed by the three judges then present, that if a person, under a pretence of being an actual settler, shall seat himself on lands previously warranted and surveyed, within the period allowed under a fair construction of the law, to the warrantee for mak- *ing his settlement, withhold the possession and obstruct *[575 him from making his settlement, he shall derive no benefit from this unlawful act. Ib. 242. If the party himself is the cause, wherefore the condition cannot be performed, he shall never take advantage of the non-performance. The same doctrine was asserted in this place in Hazard's lessee v. Lowrey, in September term 1806, and again recognized by a majority of this court in Patterson's lessee v. Cochran, at the last term here, on an appeal from my decision in Beaver county. In the latter case the expressions of the court are very strong : " A defend-" ant having hindered a warrantee from making a settlement, " shall not be permitted to defend himself, because a settlement " has not been made. There are many cases, in which it has " been held contrary to equity and good conscience, and destruc-

[Jones's Lessee v. Anderson.]

"tive of morality, to permit a defendant in ejectment to take
"advantage of a defect in the plaintiff's title.  A man who has
"received land under a lease, is not permitted to controvert the
"title of his lessor.  A mortgagee omits to record his mortgage,
"and yet if one purchases with notice thereof, he shall hold the
"land subject to the mortgage.  It would be an outrage on so-
"ciety, a violation of the first principles of sound policy and
"good government, to permit a wrong doer to derive benefit
"from his own unlawful conduct."

We might reasonably suppose, that after three decisions on
solemn argument in Bank, and one other at a special court di-
rected by the legislature to ascertain the true construction of
the law of 3d April 1792, this question would be at rest.  We
trust, it will not be again revived.  Unless the rule of *stare de-
cisis* is adhered to in the administration of justice under a gov-
ernment of laws, all property must be rendered insecure.

If a warrantee is intitled to the exclusive possession of the
land he has paid for, a person withholding the possession against
him, obstructs and prevents him from making his settlement;
he is the cause of non-performance of the condition.  One must
be little acquainted with the secret springs of the human heart,
and not conversant in the history of the lands N. and W. of the
rivers Ohio, Allegheny and Conowango creek, who would sup-
pose that on the requisition of the warrantee, the actual settler
would deliver up the possession of them.  Can one solitary in-
stance be produced of such obedience to the laws?  Can it be
presumable then that such request would be attended with good
effects?  As to force or threats being indispensably necessary
to be shewn on the part of the warrantee, to have been used by
the actual settler, the mild spirit of the law does not invite to
adventures, which would naturally tend to a breach of the pub-
lic peace.  We therefore conclude, that as between the litigant
*576] *parties, the adverse possession is *ipso facto*, an illegal
prevention.

It has been further objected, that the entry of the actual set-
tler was congeable for the condition broken.  The contrary doc-
trine was asserted by us, on full argument, in Morris's lessee v.
Neighman and Sheiner, 4 Dall. 210, at the Circuit Court here,
in May 1800, which was recognized in the Commonwealth v.
Coxe, before cited, and what is now contended for, is contra-
dicted by the plain express words of the act of 3d April 1792.

The provisions of the act of 3d April 1804, 6 St. Laws 511,
afford a strong legislative construction, that a vacating warrant,
or some substitute therefor, was necessary in such a case.  But
this objection, if even sustainable as a general proposition, is
not applicable to the present instance.  The warrantee was en-
titled to a period of two years after the ratification of the treaty
at Fort Grenville, which ended on 23d December 1797, where-
in he might make his settlement.  But instead of allowing him

the full interval of two years, the unlawful entry was made upon his lands within the period of seventeen months, by those under whom the defendants claim, viz. in May 1796.

Lastly, it has been contended, that although no application was filed, or warrant of default issued in favour of the defendants, previous to their entry on the lands or previous to the commencement of this ejectment, yet it was offered to be shewn in evidence, that an application for a vacating warrant was filed in the proper office for the land, by one of the defendants, previous to the trial, which was overruled. The force of this objection depends on the true construction of the 1st section of the aforesaid act of 3d April 1804. "Such application intitles "the applicant to all the privileges and benefits, that an original "or vacating warrant would intitle him to"—but to no more.

But as a warrant taken out after the commencement of this suit would not avail the defendants, neither would the application which is substituted therefor. To construe it otherwise, we must drop part of the expressions of the act, which we are not justified in doing; and moreover, we should detract from the honour and justice of the legislature thereby. We have not the smallest hesitation in declaring, that we concur with the chief justice in the construction he has put on this section; and I will only add, that I assigned the same meaning to it, at a Circuit Court in Beaver county in September 1806, in Shippen's lessee *v.* Auchenbaugh, upon argument. An appeal was had therein, which was afterwards dismissed, but no objection was made to the decision upon that point.

Upon the whole we are fully satisfied that there is strong reasonable ground, and even certainty, to conclude, that justice has *not been done by the verdict which had passed in this cause; that the plaintiff is entitled to a new trial, and [*577 that the judgment of the Circuit Court should be affirmed.

New trial awarded.

Referred to in 1 Watts 101 where it is said that Jones *v.* Anderson was overruled in part by Young *v.* Beatty 1 S. & R. 74; but see 5 Watts 395, 431, 501, and 551. Cited in 7 S. & R. 306.