# Campbell *against* Galbreath.

In an action of ejectment in the name of a trustee, the *cestui que trust* is not made a competent witness, by an assignment of all his interest in the land to a third person, who stipulated to pay all the costs which had accrued, and which should accrue in the action, without the right to reclaim the same in any event. Nothing short of an actual payment and deposit of the money in court will render him competent.

If an action of ejectment be brought in the name of the warrantee, who has merely the legal title, and the *cestui que trust*, who instituted it, during the pendency of the action, and upon the trial, assigns all his interest to a third person, the plaintiff's right to recover is not thereby defeated.

If an action of ejectment be instituted by one of several *cestuis que trust*, in the name of the warrantee, the plaintiff is not only entitled to recover the undivided interest of the one at whose instance the suit was instituted, but the assent of all his co-tenants in common will be presumed, and a recovery may be had for all.

After an action has been put at issue, the defendant can not require the plaintiff to declare for whose use the suit is brought.

If a defendant have reason to believe, that an action has been brought in the name of a legal party, without his assent, and for the use of another, he may require the plaintiff's attorney to file his warrant of attorney; but not after pleading and putting the cause to issue.

In an action of ejectment the defendant may plead in abatement. Hence, if the action be commenced in the name of a fictitious person, the defendant may plead in abatement, that there never was such a person.

The entry of an actual settler, upon land north and west of the Ohio and Alleghany rivers and Conawango creek, which had previously been appropriated by a warrant and survey, within the two years allowed to the warrantee to make his settlement and improvement, is such a prevention, as will excuse the warrantee, from the performance of the condition required of him by the act of 1792; and the settlement and improvement of the actual settler is intrusive, and will enure to the benefit of the warrantee.

ERROR to the common pleas of *Mercer* county. Special court, held by Shippen, President.

Josiah Galbreath against Thomas Campbell. Ejectment for a tract of land. All the points made in the court below and in this court, and the grounds upon which they were supported, are so distinctly and fully stated in the opinion of the court, that it is not necessary to insert them here.

*Pearson,* for plaintiff in error.
*Biddle* and *Sullivan,* for defendant in error.

The opinion of the Court was delivered by

·KENNEDY, J.—There is nothing tenable in any of the matters assigned for error, excepting in the second bill of exception, which was taken to the opinion of the court below, in admitting George .W. Fell, to testify as a witness on behalf of the defendant in error, the plaintiff in the court below. It is admitted, that Fell was one of the *cestuis que trust,* for whose use, this action was commenced in the name of Josiah Galbreath, as a trustee merely. Fell, however,

[Campbell v. Galbreath.]

pending the action, assigned all his interest and claim to the land in question, to William S. Rankin, who agreed to pay all the costs, which had accrued in the action, and likewise all those which should accrue and be incurred in it thereafter, without claiming a return of the same or any part thereof, in any event whatever; and accordingly entered into a stipulation on the record of the suit to that effect; upon which he was admitted by the court to testify for the defendant in error, notwithstanding the counsel for the plaintiff in error, objected to him as being incompetent on the ground of interest.

It has been decided by this court, in two or three cases at least, that a person for whose use an action is brought, no matter whether his name be on the record or not, cannot be made a competent witness to support the action, by assigning his interest and claim to whatever may be recovered in it, without all the costs, accrued therein, being actually paid, and a sum of money brought into court and deposited with the prothonotary or·clerk, sufficient in amount, in the estimation of the court, to pay all the subsequent costs which shall thereafter accrue, and to be appropriated to that end, whether the plaintiff succeed in the action or not, without any right or claim whatever on his part to have them repaid.　No promise or engagement of the assignee or of any other person on his behalf to pay the same or any part thereof can supply the want of payment of the costs already accrued, and a deposit of money sufficient to pay all which may or shall accrue.　And .it may be considered now as settled, that nothing but an actual payment of all the costs, which have accrued and a deposit of a sum of money sufficient to pay the residue thereof, which shall have accrued upon the final determination of the suit, together with an absolute relinquishment of all right to have or claim a return of the same, is sufficient to relieve the party for whose use the action was commenced, after assigning his interest therein, from his liability for the costs of the action, and from the interest which he has by reason thereof, in the event of the suit, so as to render him a competent witness to sustain it.　We therefore think there was error committed in admitting George W. Fell to testify on behalf of the plaintiff below, and upon this ground alone the judgment is reversed.

Although, for the purpose of trying this cause again, it may not be indispensably necessary, to notice particularly the other matters, which have been assigned for error; yet, believing from some of the observations made by the court below in relation thereto, as well as from the manner in which the counsel for the plaintiff in error, has pressed them upon us as being erroneous, that he may not, perhaps, be singular in the opinion as to their being so, it is deemed proper out of respect for those who seem to have been so impressed, to mention some of the reasons why they are not considered erroneous.

Firstly.　It has been argued, among other things, that as George

[Campbell v. Galbreath.]

W. Fell was one of the persons for whose benefit the suit was com‑ menced, and as he assigned his right, whatever it was, to William S. Rankin during the pendency of the suit, all right to recover the possession of the land or any part of it, by virtue of his right or interest is therefore gone. If Fell had been the plaintiff himself on the record, and a recovery had been claimed on the strength of a title actually vested in him to the land, this position might have been correct; but then that is not the case, for a recovery is here claimed upon a legal title, granted for the land by the common‑ wealth, to Josiah Galbreath, who is the only plaintiff upon the re‑ cord in the action; and unless a good subsisting title were shown to exist in him, it is perfectly clear that no recovery could or ought to have been had, though George W. Fell might have been invested with a title or right to the land, that would have enabled him to re‑ cover, had he been the plaintiff in whose name the action had been brought. It was not necessary to entitle Josiah Galbreath to recover, that he should have been invested with the legal title to the land for his own use or benefit; it was sufficient that he had the legal title alone in him, to enable him to recover for the benefit of the *cestui que trust* against all the world. And in England, whence we have derived our principles of jurisprudence mostly, the party invested with the legal title, though in trust only, may maintain an action of ejectment even against his *cestui que trust,* if he be in possession of the land; the latter, however, where the possession of the land by the trustee is not necessary for the purpose of executing the trust, may obtain protection against his trustee's turning him out of the possession, by having recourse to a court of equity for an in‑ junction. But here for want of a court of equity, the *cestui que trust* is permitted to defend against the claim of his trustee at once in the action of ejectment, and to protect himself under his equita‑ ble right. And generally it is only the *cestui que trust,* or those claiming the possession of the land under him who can set up the equitable title against the assertion of right under the legal title. The circumstances, therefore, of the *cestui que trust's* assigning or transferring his right to the land, during the pendency of the eject‑ ment in the name of the trustee, cannot prevent nor affect the right of the plaintiff to recover the possession thereof in the slightest de‑ gree, unless where the assignment is made to the defendant in the ejectment, when he may plead it *puis darrien continuance* against the plaintiff's further maintenance of the action.

Secondly. It has been contended, that although Josiah Galbreath, the plaintiff below, was invested with the legal title to the whole of the land, yet the recovery ought only to be for that proportion of it, which belonged to the *cestuis que trust,* at whose special request the counsel attending to the trial for the plaintiff, declared he was doing so. Tenants in common have a unity of possession, and the entry of one of two or more tenants in common is uni‑ formly considered the entry of all; so much so, that unless one

entering, *claim the whole to himself,* his entry will be deemed, in law, the entry of all, and his possession thereupon taken, the possession likewise of all. Smales *v.* Dale, *Hob.* 120; Ford *v.* Grey, *Salk.* 285; Empson *v.* Shackleton, 5 *Burr.* 2604; 2 *Bl. Rep.* 690; *Woodfall's Landlord and Tenant* 445; Barnard *v.* Pope, 14 *Mass.* 438; Brown *v.* Wood, 17 *Id.* 75; Shumway *v.* Holbrook, 1 *Pick.* 116. If then one tenant in common may make an entry for all, so as to prevent the statute of limitations from running against them, there would seem to be little reason, if any, where they have one common trustee, in whom the legal title to the land is vested, why one of them should not be able to direct an ejectment to be brought in the name of the trustee for the use of all; which is only another mode of obtaining an entry and possession so as to arrest the running of the statute of limitations; besides, as it is manifestly an act for their benefit, it is reasonable to presume that it will be approved of, ratified and confirmed by them, if it was not previously authorised.

For ought, however, that appeared in this case, all the *cestuis que trust* may have been consulted and consenting to the bringing of this action. The declaration of the counsel who tried the cause last, made at the time of that trial, that William S. Rankin and the heirs of Benjamin Lodge were interested as plaintiffs, and that he knew of no other person interested as plaintiff, does not disprove this by any means; because it might have been so without his knowledge. And, moreover, the counsel who instituted the suit originally, and who attended to the first trial, was dead at the time of the second; and it did not appear by whose authority the action was commenced by him.

Thirdly. It would also seem, that an idea has prevailed to some extent, that the defendant in such case as the present, after having pleaded in bar and joined in putting the cause to issue, when the plaintiff has brought it on to trial, has a right then to demand for whose use the suit has been commenced and is carrying on. I, however, am not aware of any good authority upon which such opinion or right can be sustained. In support of it, however, it has been alleged, that the defendant, in case he should become entitled to recover costs, may not know to whom he shall have a right to look for payment of them unless the real plaintiff is disclosed. But surely it is a sufficient answer to this, that the plaintiff on the record is presumed to be the real plaintiff, and to be liable for the costs of the action, in case of his failure to prosecute it successfully, until the contrary shall be made to appear. If, however, in the course of the trial, it should turn out from the evidence that he is only a trustee, without the least interest whatever in the action: and that it was commenced without his knowledge or consent, for the exclusive benefit of others, they, whoever they are, become thus made known to the defendant, so that if the cause should be determined in his favour he can be at no loss, for want of knowledge, to whom he may

[Campbell v. Galbreath.]

look for payment of his costs.　But it has been 'said, again, that unless the attorney appearing for the plaintiff shall be compelled on the trial to declare for whose use the action was instituted and is carrying on, strangers, who have no interest whatever in lands appropriated under warrants and surveys made and returned thereon, may institute ejectments in the names of the warrantees, who also have no interest in the lands, though invested with the legal title to them, against those in possession, who entered as intruders, but have made extensive and valuable improvements thereon; which may thus be taken away from them after their having expended both labour and money to a large amount in making them, by those who have not even the shadow of right or claim to the land.　To this it may be answered, as has been already stated, that the person in whose name the action is brought on the record, must be presumed to be the real plaintiff, unless a *cestui que trust* be also named thereon, until the contrary is shown; but if there be no *cestui que trust* mentioned, and the defendant knows the fact, that the plaintiff is invested with the legal title to the land for which the action is brought, merely as trustee, and has reason to believe that it has not been commenced at his instance for the benefit of the *cestui que trust*, but has been brought by a stranger who has no interest in the land, he may, under the twenty-eighth section of the act of assembly, of the 22d of September 1772, and the rule of practice for carrying the provisions thereof into effect, made and established under the act of the 25th of September 1786, empowering the court to make rules for the government of its own practice, before he pleads to the action, have a rule on the plaintiff's attorney to file his warrant, if he has not done so, in order that he may know and ascertain by whose authority the suit has been instituted.　But if the defendant plead without having the plaintiff's warrant of attorney filed, he will not be entitled to such rule afterwards.　He will be considered as having waived his right in this respect.　Mercier *v.* Mercier, 2 *Dall.* 142.　And having declined voluntarily, as it were, either from neglect or design, to avail himself of the information, which he might have obtained by compelling the plaintiff's attorney to file his warrant; and instead thereof, having stated his defence and the nature of it upon the record to the plaintiff's claim, by pleading in bar to the action, it would be unreasonable and contrary to all the principles of legal analogy, as well as to the established rules of practice and pleading, that he should afterwards be permitted to embarass and arrest the regular progress of the cause in its course to trial upon the issue joined in it, by attempting to have an inquiry into preliminary or collateral matters, which, if proper to be investigated at all, ought to precede the joining of an issue upon the merits of the case.

It may be remarked here also, that the defendant, in certain cases, has a right to demand security for costs; but he is not permitted to exercise it at the moment of the trial.　For instance, in a *qui tam* action, or where the plaintiff resides without the state, the defendant,

[Campbell v. Galbreath.]

by application to the court, which must be made at least one term previous to that for which the cause is set down for trial, may have an order that security be given by the plaintiff in the first case for costs, by alleging a defence and showing from the record that it is a *qui tam* action; and, in the second case, upon showing by affidavit that he has a defence, and that the plaintiff resides without the state.

Accordingly, in order to prevent all unnecessary delay in bringing a cause to trial on its merits, and with a view to attain this great end as speedily as may be consistent with the time that is requisite to enable each of the parties to prepare fully for it, the same principle is observed and carried out in the rules of pleading; so that if an action be commenced in the name of a fictitious person, the defendant may plead in abatement that there never was any such person in *rerum natura*; *Bro. tit. Brief, pl.* 25; *Theloal's Dig., lib.* ii., *case* 7; 1 *Com. Dig. tit. Abatement, E.* 16, *p.* 60, 61; *Doe v.* Penfield, 19 *Johns.* 308; 1 *Tidd's Prac.* 579; 1 *Chitty's Pl.* 435; or if the plaintiff once existed, but died before the impetration of the original writ, the defendant may likewise plead this in abatement. *Bro. tit. Brief, Pl.* 25, 70; 1 *Com. Dig. tit. Abatement, E.* 16, *p.* 61. But then he will not be permitted to plead those matters after pleading in bar to the action, nor even after a general imparlance; for all pleas or excuses of this kind, for not meeting the trial of causes upon their merits, are regarded as dilatory, because put in with a view often to delay the final issue of them; and are therefore not much favoured in law. And, therefore, to entitle them to be received by the court, they must be put in at the earliest opportunity afforded the party, unless some cause can be shown for claiming indulgence by a special imparlance.

But it has been said that a plea in abatement is not an appropriate plea, and that it cannot be received in ejectment, because as by the fourth section of the act of assembly of the 13th of April 1807, 4 *Sm. Laws*, 477; it is enacted that " the plea in ejectment shall be, not guilty;" and therefore no other plea can be put in or received. There is certainly no good reason why a plea in abatement should not be as proper, in such action as in any other; especially since all fiction is done away with in it, and the writ commencing the action must be sued out either in the name of the person actually invested with the legal or equitable title. By the second section of the act of the 21st of March 1806, for regulating arbitrations and proceedings in courts of justice, a new mode of instituting the action of ejectment by writ is prescribed, and the form of the writ is thereby given. It is thereby made the duty of the plaintiff, on or before the first day of the term, to which the writ is returnable, to file in the prothonotary's office, " a description of the land together with the number of acres, which he claims and declares that the title is in him for; and the defendant shall enter his defence, if any he hath, for the whole or any part thereof before the next term, and thereupon issue shall be joined." Here, it is merely directed that the defendant shall enter

[Campbell v. Galbreath.]

his defence for the whole or any part of the land claimed by the plaintiff, if he has any, but it is not said in what form this shall be done. This was afterwards thought to be a defect, or considered an omission; and, to supply it, the legislature enacted, that " the plea in ejectment should be, not guilty;" that is, that the defendant should enter his defence by pleading not guilty. It is evident from the whole frame and spirit of these acts, that the legislature only intended to give direction in regard to such defence as met the plaintiff directly on the merits of his claim, and formed an absolute bar to his recovery either in whole or in part; and not to matters which had previously been pleadable only in abatement. These they did not intend to meddle with, but designed that they should stand on the same footing, and be taken advantage of in the same manner, as before, and in other cases. And accordingly, in Lyons *v.* Miller, 4 *Serg. & Rawle* 280, which was an action of ejectment brought and tried under the acts of 1806 and 1807, the late chief justice in delivering the opinion of this court upon the matter assigned for error, which was, that the act of assembly prescribing the form of the writ of ejectment directed the township to be mentioned, which had been omitted, says " it does so, and *had this matter been pleaded in abatement the plea would have been good."* But suppose the act were to be so construed as to shut out all pleas of abatement in the action of ejectment, what would be the legitimate and fair conclusion? Would it not be, that all matters would be precluded from being given in evidence on the trial of the cause which could only have been given previously to the passage of the act, under corresponding pleas in abatement? This inference would certainly not be a strained one; and would, for several reasons, as it appears to me, be much more rational than that no plea in abatement should be received. First, because the act does not expressly authorize matters of abatement to be given in evidence on the plea of not guilty; nor is it thereby authorized by any necessary implication. Secondly, because if such matters were to be given in evidence on the plea of not guilty, it would enable the defendant to take the plaintiff by surprise, by giving them in evidence without any previous notice or intimation given to the plaintiff of it, to enable him to prepare to meet it; and, hence, the greatest injustice might be done to the latter. Thirdly, because to permit all matters to be given in evidence by the defendant, under the plea of not guilty, which before could only have been given under suitable pleas in abatement, would necessarily compel the plaintiff to come to the trial of the cause prepared with witnesses and evidence to meet the defendant, not only on the merits of his claim, but likewise upon every possible collateral and preliminary matter, so far as his mind or the advice of his counsel might enable him to anticipate what he would have to encounter; which, anterior to the act, could possibly have been made the proper ground of a plea in abatement, and been given in evidence under that alone: thus increasing the costs and expenses perhaps four or five

[Campbell v. Galbreath.]

fold beyond what otherwise would be requisite; and at the same time throwing into the jury-box a great mass of testimony, bearing on such a multiplicity and diversity of points as to create the utmost confusion in the minds of the jury. It is obvious, therefore, that this construction of the act, and the course that would have to be pursued under it, would, instead of simplifying the trial and investigation of the cause as the legislature intended, render it infinitely more complicated and difficult than it ever had been before; so much so, probably, in some cases, as to make justice altogether unattainable by reason of it.

It may also be further observed, that as no other than the party invested with either the legal or equitable title to the land has any right or authority to bring an ejectment for it, and the attorney suing out the writ may be compelled in the manner already mentioned to file his warrant of attorney for doing so, the defendant has it in his power generally, by this means, to ascertain by whom, and whether or not the suit has been instituted by the one or the other; and if by neither, but in the name of one of them, he may show the want of authority and have the suit dismissed; for no court will suffer its process to be abused, and most especially not by its officers. But if the suit should be instituted in the name and by the authority of one who has really no claim to the land, the defendant must of course answer to the suit or give up the land; and, though he may have no title himself to it, yet he may protect himself in his possession by relying on the inability of the plaintiff to show a title, or by showing a good title himself in a third person. If, however, the ejectment be brought by the authority, and in the name of a warrantee who has no real interest in the land, and the defendant be without right to it, it may be prudent for him to put himself under the protection of the *cestui que trust*, by becoming his tenant, which he doubtless may effect, unless where the *cestui que trust* may wish to obtain the actual possession himself, when he would be most likely to take sides with the warrantee: in which case the defendant would seem to have no alternative but to yield the possession of the land to its proper owner, which must be admitted by all to be not only just but equitable.

It has also been complained of as error, that the court refused to leave it to the jury to find whether George W. Fell had abandoned his improvement and settlement or not, and, if he had, then to instruct them that the plaintiff could not recover. This, it is contended, ought to have been done according to the principle laid down in Cosby *v.* Brown, 2 *Binn.* 124, where the contest was between two actual settlers, and not between a warrantee and a settler as in this case. Here George W. Fell's improvement and settlement, so far as he progressed with it, is set up, and the evidence seems sufficient to prove the fact to have been so, as having been made for and on behalf of the warrantee in fulfilment of the conditions upon which the land mentioned in the warrant was granted to him by the state.

[Campbell v. Galbreath.]

The improvement and settlement commenced by Fell must, therefore, be regarded as having been commenced and carried on by the warrantee himself. This being so, and it appearing also from the evidence that Fell had begun his improvement within two years after the 22d of December 1795, the date of Wayne's treaty, when the prevention to making settlements from the Indian enemy ceased to exist; or, at the very latest, before Hamilton, from whom Campbell bought and claims, began his improvement, the entry of Hamilton into the land and taking possession of it, so as either to exclude Fell or to interfere with his improving the land where and as he pleased, was altogether unlawful, and must be considered, according to a series of decisions on the subject, *ipso facto* a prevention on the part of Hamilton and those claiming under him; so that they cannot be permitted to claim any benefit from the non-performance of the condition of settlement and improvement by the owner of the warrant himself personally, or by any other at his instance. The cases of the Lessee of Morris *v.* Neighman, 2 *Smith L.* 211; *S. C.,* 4 *Dall.* 209; 2 *Yeates* 450; Lessee of Wilkins *v.* Allenton, 3 *Yeates* 273; Hazard *v.* Lowrie, 2 *Smith L.* 213; *S. C.,* 1 *Binn.* 166; Lessee of Buchannan *v.* Myers, 2 *Smith L.* 224; *S. C.,* 3 *Yeates* 589; Patterson *v.* Cochran, 1 *Binn.* 231, and Jones *v.* Anderson, 4 *Yeates* 574, 575, all prove and establish this doctrine in the fullest manner. In the last case, Jones *v.* Anderson, the plaintiff claimed under a warrant dated the 21st of April 1794, issued under the act of the 3d of April 1792, upon which four hundred acres lying on the Big Beaver creek were surveyed on the 25th of May 1795, and afterwards returned. The defendant claimed under a settler, who entered adversely to the warrant, and built a cabin on the land in May 1796; after which he, and those deriving claim to the land from him, continued to improve and hold the possession thereof until the 15th of February 1802, when the ejectment was commenced by the plaintiff. It did not appear that the plaintiff had ever attempted to settle or improve the land; nor yet that he ever demanded the possession of it from the first settler or any of his successors therein. Neither did it appear that any threats, much less force, had ever been made or used by the first settler, or any of those who succeeded him in the possession of the land, so as to deter or prevent the owner of the warrant, under an apprehension of personal danger, from entering and making upon it such settlement and improvement as the act of the 3d of April 1792 required. And the language of the late Mr Justice Yeates, who delivered the opinion of the court, shows most clearly that menaces or force of any kind are not necessary to constitute a prevention in such case. He says: " As to force or threats being indispensably necessary to be shown on the part of the warrantee, to have been used by the actual settler, the mild spirit of the law does not invite to adventures which would naturally tend to a breach of the public peace. We therefore conclude, that as between the litigant parties, the *adverse possession* is *ipso facto* an

[Campbell v. Galbreath.]

illegal prevention." Thus, in effect, the entry, settlement and im‑
provement of the intruder within the time allowed by law for the
warrantee to enter and make his settlement is made to enure to the
benefit of the latter, and his title to the land is thereby rendered per‑
fect. Having, then, by this means, become invested with the abso‑
lute fee simple estate in it, abandonment is out of the question ; and
nothing short of twenty-one years adverse possession can defeat or
bar his right.

Judgment reversed, and a *venire de novo* awarded.