H. V. FOWLER v. WILLIAM DAVENPORT AND ANOTHER.

The use of the words "unavoidable accidents," in a bill of lading, instead of the usual ones, "inevitable accidents," does not vary the meaning of the instrument, or change the liability of the carriers.

Where the plaintiff's right to recover depended upon the fact being shown that defendants were partners in, or joint owners of a boat, upon which cotton was freighted and lost, and there was a plea of the general denial, and a special plea admitting the joint ownership, it was held that each plea presented a separate issue, and the admissions contained in the special plea must be taken in reference only to the issue presented by it; and that the admission thus made, did not dispense with the necessity of the plaintiff's proving the partnership, or joint ownership, except as to the issue presented by such special plea.

Fowler v. Davenport.

The general denial puts the plaintiff upon the proof of his cause, whatever else the defendant may have pleaded.

The right given by the Statute to the defendant, to plead "as many several matters," &c., is general, absolute, and unlimited, if they are pertinent—filed all at the same time, and in due order of pleading. There is no qualification or abridgment of the right as to matters that are inconsistent.

Should there be inconsistent and contradictory allegations in the same plea, the rule might well obtain, that for the purpose of the issue presented by that plea, the allegation most favorable to the plaintiff, should be treated as an admission in his favor.

Where a commodity shipped, is lost after the commencement of the voyage, the nett value of such commodity at the place of destination is the true criterion of damages.

Interest, as such, is not allowed on damages for the breach of a contract, to which interest is not a legal incident, but may be allowed by way of mulct or punishment for some fraud, delinquency or injustice of the debtor, or for some injury done by him to the creditor.

Appeal from Smith. Tried below before Hon. John Gregg. The facts of this case, upon which the Opinion proceeds, are stated therein.

*Stephen Reaves*, for appellant. I. It is insisted that the Court below erred in sustaining the exceptions to the several answers. (See Whitesides v. Thurlkill, 12 Swedes & Marshall, 599; Chevallier's Adm'rs v. Patton *et al.*, 10 Tex. R. 344; Harvey v. Baylor, 18 Tex. R. 498.)

II. The Court erred in its charge to the jury as a whole, and especially in instructing the jury to allow the plaintiff interest on the value of the cotton as proven.

Interest is a creature of Statute, and cannot be allowed without the sanction of the law of the land. It is the creation of positive law, and we have not Statute authorising interest in suits of this character. (See Burton v. Anderson, 1 Tex. R. 93; Cloud & Smith v. Adriance, Id. 102; Close v. Fields, 2 Tex. R. 232; Cook & Adriance v. McGreal, 3 Tex. R. 487; Davis v. Thorn, 6 Tex. R. 482.)

There is no interest allowed by Statute, except on written contracts, ascertaining the sum due. (Hart. Dig., Art. 1607.)

*B. T. Selman*, for appellee. In support of the ruling of the Court upon the answers of defendants, submitted the following, among the many authorities defining the character and liabilities of a common carrier : (Chitty on Con. 480 ; 2 Kent's Com. 598, 601, 608, 609, and note to 597 ; Story on Bailments, 495, 496, 365, 511, 467 ; Smith's Mercantile Law, 178, 179 ; Jones on Bailments, 104 ; 5 Blackford's Ia. R. 222 ; 2 Bas. & Pus. R. 419 ; 2 Kelly's Ga. R. 349. See again 2 Kent, 597, 602, and note to 610, and Story on Bailments, 505, 16, 17, 18 & 571 ; 21 Wendall, 190.) These authorities define a common carrier to be an insurer against every loss except those occasioned by " the act of God " or " the King's enemies."

*Tignal W. Jones,* also, for appellee. I. The answers excepted to and ruled out do not (taking each answer as a whole, or each plea in each answer by itself,) constitute in law a denial that the defendants were common carriers.

II. But even if the Court should think that the defendants' answers, which were ruled out, or any one of the pleas in those answers, constitute a denial of the fact that the defendants were common carriers, then I maintain that the defendants were estopped from saying that they were not common carriers, because their bill of lading, which was made a part of the petition, shows that they contracted as common carriers to carry the cotton. The bill of lading, where there is one, is the contract. (Angell on the Law of Carriers, Sec. 223.) It furnishes the evidence of the contract, (Angell on the Law of Carriers, Sec. 464 ;) and cannot be contradicted by parol proof. (Angell on the Law of Carriers, Secs. 228, 229, 230.) It is manifest, therefore, that the defendants' answers, which were overruled, are not responsive to the petition, even if the Court should think that the whole of them, or any one of them,

Fowler v. Davenport.

contained a denial that the defendants were common carriers, and were properly stricken out.

III. The answers excepted to and ruled out by the District Court do not show that the defendants, although common carriers, made such a special contract with the plaintiff as exempts them from the liabilities of the common carrier.

IV. The terms, "unavoidable accidents," employed in a bill of lading, mean the same thing as "inevitable accidents," (Walpole v. Bridges, 5 Blackford's Ia. R. 222; Fish v. Ross, 2 Ga. R. 356, and Webster's Unabridged Dictionary;) and "inevitable accidents" mean accidents which cannot be avoided by any human skill or foresight. (Angell on the Law of Carriers, Secs. 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, and authorities there cited. See also Chevallier v. Stratnam, 2 Tex. R. 115; Walpole v. Bridges, 5 Blackford's Ia. R. 222; Fish v. Ross, 2 Kell. Ga. R. 356; Philio v. Sanford, 17 Tex. R. 227, and Haynie v. Baylor, 18 Id. 498.)

There is no objection, by the defendants, to the general charge of the Court in regard to the measure of damages, so that I shall, in this connexion, only discuss a portion of the charge.

V. Did the Court err in the charge, which reads: "If the jury find for the plaintiff, they may add to whatever sum they may find the plaintiff entitled to eight per cent. interest from the date at which the cotton should have been delivered.

I maintain that this portion of the charge of the Court is in strict accordance with the general law upon the subject of damages in the case of carriers, as stated by Mr. Sedgwick in his work on the Measure of Damages.

That learned author states the rule to be thus: "As a general rule, where goods are entrusted to a carrier, and they are not delivered according to the contract, the value of the goods with interest thereon from the day when they should have

been delivered, is the measure of damages." (Sedgwick on Meas. Dam. 355.)

On the subject of damages in the case of a carrier, Mr. Angell, in his work on the Law of Carriers, says : "The amount of damages to be recovered, where goods are entrusted to a carrier, and they are not delivered according to his undertaking, depends upon his liability being established, either to answer for the whole value, or only to the extent to which he has succeeded in limiting his responsibility by notice." "The general rule, in the former case, is the measure of damages." (Angell on Law of Car., Sec. 482.)

Mr. Angell, in his work on Carriers, refers to the case of McGill v. Rowand, (3 Barr. Penn. R. 342, 451,) in support of this rule.

In the case of Watkins v. Laughton, (8 Johns. N. Y. R. 213,) the Supreme Court say : "The question of interest depends on circumstances. The jury may give interest by way of damages, in cases in which the conduct of the master was improper." In the case of Amory v. McGregor, (15 Johns. N. Y. R. 24,) the same principle is recognized.

But the case of King v. Sheppard, (3 Story Cir. Co. R. 349,) is a direct authority in support of the general rule laid down by Mr. Sedgwick on the Measure of Damages, p. 355.

VI. Did the Court err in the portion of the charge to the jury, in which the jury were instructed that the defendants admitted by their pleadings that they were joint owners in the boat?

If the defendants had put in no other plea but the general denial, the appellee would have been compelled to prove that the defendants were partners or joint owners in the boat.

But by pleading the second and ninth pleas of the original answer, and the answer filed 10th June, 1857, they waived proof of the partnership or joint ownership of the boat in these pleas either actually or by intendment of law. (Greenleaf on Evidence, Vol. 1, Sec. 27 and 205.)

ROBERTS, J. This is a suit by appellee against appellants, as partners and common carriers, for not delivering twenty bales of cotton to his consignees at Sabine Pass, which were shipped by appellee on board of their boat "Independence" at Patton's Port in Smith county, and for which one of the said owners of said boat, William Davenport, executed, in his own name as "master," a bill of lading in regular form, undertaking to carry and deliver said cotton, &c., "all unavoidable accidents excepted." The bill of lading is made a part of the petition. The use of the word "unavoidable" in it, instead of the usual word "inevitable," does not vary the meaning of the instrument, or change the liability of the carriers. (5 Blackford R. 222 ; 2 Kelly Geo. R. 394.)

This instrument contains the contract under which the cotton was shipped, and by it the responsability of common carriers is assumed. The breach of the contract was assigned by averring that the cotton was not delivered, and that plaintiff had never received anything for the said cotton.

The defendants pleaded a general denial, and a special plea that the boat having started on the trip a raft injured it by unavoidable accident and caused the cotton to be damaged, and that other means of transportation were adopted by which the cotton was delivered to Fowler's Commission Merchants in New Orleans, the ultimate destination of the cotton, and that he had received the proceeds of the cotton ; that defendants were private not common carriers, and had used due diligence, &c. Various other pleas were filed, which do not state any facts that can be held to qualify the liability of the defendants under any decision of this Court as seems to have been intended ; and the nature of the facts, as developed in evidence on the trial, renders it a useless task to discuss their sufficiency.

As to facts proved on the trial, it will suffice to state that it was shown that the cotton was delivered into the boat; the bill of lading was executed ; the boat was injured on the way

by a raft; the cotton was taken out in a damaged state and conveyed by other means to New Orleans and not to Sabine Pass, and delivered to certain persons, the Commission Merchants of plaintiff, and some of it sold and placed to his credit; and that he had continued to have dealings with said merchants. It was not proved that Hill and Davenport were partners, or that Hill was the owner or a joint-owner of the boat.

The Court charged the jury that "it was not necessary for the plaintiff to prove the existence of a partnership between defendants, they having admitted it in their answer; nor was it necessary to prove who was the owner of the boat. It is sufficient to show that defendants were using the boat for the purpose of transporting freight."

It is true, had it appeared in evidence, that defendants were using the boat, as jointly concerned in freighting cotton for other people for hire, it would not be material whether they were partners or joint owners in the property of the boat or not. They might have chartered the boat for the trip, and being jointly concerned in the adventure, they would be liable as joint owners, having a special property in it for the time. But the evidence does not show that Hill had any property, either general or special, in the boat, or that he had anything to do either with the boat or the shipping of the cotton. It is necessary therefore to determine the correctness of this charge, to-wit: that the defendants' plea admitted the existence of the partnership. There is a plea of general denial, and also a special plea admitting the joint ownership of the boat. Our Statute provides "that the defendant in his answer may plead as many several matters, whether of law or fact, as he shall think necessary for his defence, and which may be pertinent to the cause: provided he shall file them all at the same time, and in due order of pleading." (Hart. Dig. Art. 688.) The general and absolute right, here given, to plead "several matters" is unlimited, if they are pertinent, filed all

Fowler v. Davenport.

at the same time, and in the due order of pleading. There is no qualification or abridgment of this right in matters that are inconsistent. Such a qualification would destroy the right. The general issue, or special pleas amounting to it only, could not be pleaded in conjunction with pleas of confession and avoidance, because one could always be made to neutralize the other. That these several pleas are pertinent to the cause has not been questioned. The proviso, as to the time and order of filing, cannot affect the question of inconsistency. The several pleas may be inconsistent with one another, and still be severally pertinent to the cause. The universal practice of the Courts before and since the adoption of this Statute has been to sanction the right of defendants to file conjointly inconsistent matters severally pleaded. The rule established in this charge would virtually abolish this right. The general issue or general denial puts the plaintiff upon the proof of his cause of action by evidence, whatever else the defendant may have pleaded. Each plea presents a separate issue. The special plea in this case presents the issue that defendants used due diligence as private carriers and ordinary bailees for hire. With reference to that issue, thus presented, all the facts stated in that plea that are beneficial to the plaintiff, in disproving that issue, are admitted, and need not be otherwise established. A case might arise where there would be inconsistent and contradictory allegations in the same plea, and in that case the rule might well obtain that, for the purpose of the issue presented by that plea, the allegation most favorable to the plaintiff should be treated as an admission in his favor. A case might also occur where an admission might be made in writing and filed for the purposes of dispensing with proof on the trial. The case before us is not like either of these. Mr. Gould, in his work on Pleading, gives an able exposition of this subject under an English Statute similar to our own. (Gould Pl. 431 quotes Willis, 380 ; 5 Levey and R. 411 ; 2 East. 426 ; 5 Ib. 463 ; 2 John. R. 437 ; 1 Chitty Pl. 540-2-3 ; 13 East. 255 ; 5 Taunt. 340 ; 3 Bing. 635 ; 3 Pick. 388.)

The bill of lading was signed by William Davenport alone as master. It is not charged in the petition that Hill executed it or authorized it to be done. And therefore the joint ownership or partnership of Hill and Davenport was put in issue by the general denial without the plea being sworn to. The facts in the petition make a case entirely different from the case of Drew v. Harrison, (12 Tex. R. 279,) where such an affidavit was required to put the partnership in issue. Hill's liability depended on the fact being shown as alleged, that the defendants were partners or joint owners.

We think the Court erred in this charge:

The Court below, after instructing the jury that they must assess the damages by reference to the value of the cotton at the place of destination, at the time it should have been delivered, added: "If the jury find for the plaintiff they may add, to whatever sum they may find the plaintiff entitled to, eight per cent interest from the date at which the cotton should have been delivered." The verdict returned was: "We, the jury, find for the plaintiff six hundred and sixty dollars principal, and two hundred and twenty dollars interest." Was this a case proper for the allowance of interest? We do not think that the interest can be allowed. Certainly it cannot under our Statute. For had it been stipulated in the bill of lading, that in case of loss or non-delivery of the cotton, defendants should pay interest on the amount of damages, that might be sustained by such breach of the contract, it would not be in compliance with the terms of the Statute—not being a " written contract ascertaining the sum due." (Hart. Dig. Art. 1607.)

There is no decision of this Court in point. It might not be profitable to review the decisions for the benefit of analogy. Each case stands upon its own facts and reasons, where there has been a departure from the rule in the Statute; and no general rules have been laid down, either interpreting the terms, extent, and province of our Statute, or indicating the

Fowler v. Davenport.

general course of decision in reference to a departure from it. (Cloud & Smith v. Adriance, 1 Tex. R. 105 ; Close v. Fields, 2 Id. 238 ; Close v. Fields, 13 Id. 623 ; Crook & Adriance v. McGreal, 3 Id. 490 ; Davis v. Thorn, 6 Id. 486–7 ; Wetmore v. Woodhouse, 10 Id. 3 ; Chevalier v. The State, 30 Id. 315 ; Pridgeon v. Hill, 12 Id. 379 ; Pridgeon v. McLean, 12 Id. 420; Baily v. Heald, 17 Id. 105 ; Adriance v. Brooks, 13 Id. 280 ; Hicks v. Baily, 16 Id. 232.) Such an investigation is not necessary to be attempted in this case. For, by the rules laid down in other Courts, interest should not have been allowed.

It is well settled, that in a case like this, where the voyage has been commenced, and a loss has occurred, the nett value of the cotton at the place of destination is in general the true criterion of damages for a breach of the contract. This is liberal in favor of the owner of the cotton. Because generally it will give him the full benefit of his speculation in commerce, without the trouble and hazzards of resale at the market to which it is to be shipped. He recovers more from the carriar, usually, than he could from an insurer's office. For the insurer is only responsible according to the invoice prices and charges. The freight then should be deducted, although the articles did not arrive, or were not delivered. There may be variations and qualifications to this rule of damages, dependent on circumstances, which this case will not require to be noticed, except in reference to the allowance of interest. (Brandt v. Bowlby, 2 Barn. & Adolf. 932, 22 Eng. C. R. 390; Watkinson v. Langton, 8 Johns. R. 213, leading case ; Ludwig v. Meyre, 5 Watts & Serg. 437 ; Gillingham v. Dempsey, 12 Serg. & Rawle. 189 ; Arther v. The Schooner Cassius, 2 Story R. 99.)

With reference to interest, a distinction is taken in both the English and American authorities, which should not be lost sight of. Upon contracts in which an agreement to pay interest is expressed or can be implied, the interest is a legal incident, and it is held to be the duty of the Court to instruct the

jury to give interest. Then it is matter of law. In other cases it is matter of fact, as damages in other cases, and may. be allowed by the jury by analogy to interest. In such cases, "it is not an incident to the debt, but may be allowed under circumstances, by way of mulct or punishment for some fraud, delinquency or injustice of the debtor, or for some injury done by him to the creditor." (Renss. G. F. v. Reid, 5 Cowen R. 614.)

Where interest has been allowed upon a breach of a bill of lading, as a legal incident, it has been where this well recognized distinction has not been adverted to, or the question was not raised. (Warden v. Greer, 5 Watts, 426 ; Sedg. on Dam. 355.) The English authorities that have been examined make no reference whatever to interest ; but speak of the value of the property at the place of destination as the measure of damages in such a case as this. The American cases generally, that refer to interest at all, bring it under the second class, as above laid down, where there is " fraud, delinquency or injustice of the debtor," which is neither alleged or proved in the case now before us. In addition to authorities above cited, see Amory v. McGregor, (15 John. R. 38.)

We think, therefore, it was erroneous to allow interest in this case.

There are other questions as to the facts necessary to be established by the parties respectively, which either do not arise upon the assignment of errors, or are not deemed of sufficient importance in principle to require an opinion, as the cause will be in a situation to undergo a more thorough investigation upon its being remanded. Judgment reversed and cause remanded.

Reversed and remanded.