PANHANDLE & S. F. RY. CO. v. ARNETT et al. (No. 1603.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 4, 1920. Rehearing Denied March 3, 1920.)

1. EVIDENCE ☞376(6) — CONDITIONS AS TO ADMISSIBILITY OF ENTRIES OF ACCOUNT SALES.

In order to introduce account sales as a record, it is necessary to show by the entrant that he made the entries in the usual course of business, and the performance of his duty contemporaneously with the transaction recorded, and that it was correctly entered.

2. APPEAL AND ERROR ☞1053(4)—ERROR IN ADMITTING ACCOUNT SALES IN EVIDENCE CURED BY INSTRUCTION TO DISREGARD.

In an action against a railway for damages to cattle from delay and rough handling, error in admitting in evidence account sales by the two salesmen who sold the cattle for the commission company to which they were consigned was harmless, where the court instructed the jury they could not consider the evidence as showing the weight of the cattle, if there was evidence from which the jury could calculate their weight without the account sales.

3. APPEAL AND ERROR ☞1001(1)—COURT OF CIVIL APPEALS WILL NOT USUALLY DISTURB SUPPORTED VERDICT.

The Court of Civil Appeals, as a rule, where there is evidence to support a verdict, will not disturb it.

4. CARRIERS ☞228(5)—EVIDENCE NOT SHOWING DELAY IN TRANSPORTATION OF LIVE STOCK.

In an action against a railway for damage to live stock through delay in transit and rough handling, evidence as to whether or not there was any delay *held* insufficient to sustain verdict for plaintiffs; the testimony of all trainmen who handled the shipment, supported by their records, tending to show that it was handled with due dispatch.

5. EVIDENCE ☞568(7) — SHRINKAGE IN WEIGHT OF DELAYED SHIPMENT OF LIVE STOCK SHOULD BE SHOWN BY EVIDENCE MORE CERTAIN THAN OPINION.

In an action against a railway for damages to a shipment of live stock from delay in transit and rough handling, the weights of the cattle should have been shown, if possible, by more certain evidence than the opinion of a plaintiff, one of the shippers, as to what shrinkage would occur on a usual run, and what on delay, though such opinion testimony sustained verdict for plaintiffs.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by D. N. Arnett and another against the Panhandle & Santa Fé Railway Company. From judgment for plaintiffs, defendant appeals. Reversed, and cause remanded.

W. C. Reid, of Albuquerque, N. M., Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Roscoe Wilson, of Lubbock, for appellant.

Bean & Klett, of Lubbock, for appellees.

HUFF, C. J. This is an action instituted by appellees, D. N. Arnett and Otis Copeland, against appellant, Railway Company, for damages to a shipment of 132 head of cattle from Yellowhouse, Tex., to Kansas City, Mo., July 15, 1916, occasioned, as alleged, by unreasonable delay and rough handling; that the cattle should have arrived for the market on Tuesday, July 18, 1916, but did not arrive until July 19, 1916. It is alleged that 100 head of the cattle weighed 40,950 pounds, at $8 per hundred-weight; that eight steers and heifers weighed 3,760 pounds, and were worth $6.75 per hundred-weight; one steer yearling weighed about 620 pounds and was worth about $6.50 per hundred-weight; and 22 head weighed about 9,040 pounds and were worth about $6.50 per hundred-weight; each class and the price thereof was their value at the time and in condition in which they arrived; that as a consequence of the delay the cattle suffered a loss of weight of 40 pounds per head, depreciation in the merchantable price and appearance, 40 cents per hundred-weight, and a decline in market to the extent of 40 cents, due to the difference in the market on Wednesday, July 19, 1916, and the market Tuesday, July 18, 1916. The total damages claimed is $2,135. The answer of appellant is not thought to be necessary to state. The judgment is for $800, based on the findings of the jury in answer to special issues.

In this case the court submitted the issue of delay only and consequent damages. He did not instruct on the issue of rough handling or damages resulting therefrom, but withdrew that question from the jury. The jury found in answer to the issues submitted that the appellant did not use ordinary care and diligence in transporting the cattle within a reasonable time; that in consequence they were damaged, by reason of the failure to transport the cattle within a reasonable time, the sum of $500. They find the cattle were delivered to the consignee at Kansas City at 8:10 a. m., July 19, 1916, and that the difference in the market value of the cattle at the time and in the condition in which they arrived and the value at the time and the condition in which they should have arrived was $800.

[1, 2] Assignments 1 to 5, inclusive, assert the court was in error in admitting the account sales attached to the deposition of C. M. Adams, and referred to by C. L. Lebow in his deposition as giving the weight, number, etc., of the cattle. The objection is to that part of the account giving the weight of the cattle. These two witnesses, it appears, were salesmen who sold the cattle for the commission company—100 head, July 19th; 8 head, July 20th; and 22 head, July 24th. While these witnesses testify the account sales attached to the depositions were correct as to weight, prices, number, and in so far as they go, neither show they made the entries from which the account sales is taken. The trial court, in his general charge to the jury, directed them to disregard the account sales as to weight of the cattle, and if the jury did so it will obviate the objections made. In order to introduce account sales as a record, we think it necessary to show by the entrant that he made them in the usual course of business and in the performance of his duty, contemporaneously with the transaction recorded and that it was correctly entered. Railway Co. v. Leggett, 44 Tex. Civ. App. 296, 99 S. W. 176; Randle v. Barden, 164 S. W. 1063; Schaff v. Holmes, 215 S. W. 864. If the party has an independent recollection as to any matter contained in the account sales, of course, he could testify thereto the same as to any other fact; or if an account or memorandum was made by another or by himself, perhaps he could use it to refresh his memory; but a general statement by one who is not charged with keeping the record, or with any special oversight of the records, that the account is correct, we do not think should be held to be a sufficient predicate for its admission. Railway Co. v. Cauble, 41 Tex. Civ. App. 348, 91 S. W. 214.

It is held records of this kind are not admitted under the shop-book rule. It has occurred to us, however, that in making up the books of original entry if the entrants should make such entries from tickets of the weights and prices and number of cattle, or the like, reported to him in the usual and ordinary course of business, it would not be required to produce the weigher, with his tickets or stubs, or salesmen, to show prices, weights, numbers, etc.; that perhaps to that extent the shop-book rule should obtain in the establishment of records of this kind, if otherwise necessary preliminary evidence is offered. It has been said that the former strict rules are not followed.

"Inasmuch as under modern methods of extensive business houses the information relative to the transaction constituting the account must pass through various hands before being permanently recorded, some system of temporary memoranda, preparatory to the permanent records, is necessary to insure correctness as well as accuracy." Jones on Evidence, vol. 3, § 519; Scruggs v. Woodley, 179 S. W. 897.

However, there appears to be a different rule in making up books or records other than those of shopkeepers in this state, at least in some instances, to which the rules will not be applied. Railway Co. v. Johnson, 7 S. W. 838; Cathey v. Railway Co., 104 Tex. 39, 133 S. W. 417, 33 L. R. A. (N. S.) 103. in the interest of economy and convenience, it seems to us that if the party making the entry produce and establish the entry was made in the usual course of business by one whose duty it was to make it, contemporaneously with the transaction recorded, and that it was correctly made, the account ought to be admitted, as the party who makes the record is not a party at interest in the suit, and the record is in a sense against himself and part of the res gestæ. The record itself should be admissible in evidence to prove the fact shown thereby, when it is proven by the proper parties with the necessary preliminary facts shown. This appears to us to be the holding in the Startz Case, 42 Tex. Civ. App. 85, 94 S. W. 207. The trial court, we think, should not have admitted the account sales. It is probable, however, when he instructed the jury that they could not consider it as showing the weight of the cattle, he met the objection made, and no such injury is shown as will require a reversal of the case, if there is evidence in the record from which the jury could calculate the weight of the cattle without the account sales.

[3, 4] The sixth and seventh assignments assert that the overwhelming weight of the testimony is that the cattle arrived in time for the market Tuesday, July 18, 1916, at 8:10 a. m., and were unloaded in the stock pens and delivered by 8:30 a. m. on that date, and that the jury's finding that they did not arrive until 8:10 a. m., July 19th, is manifestly against the great weight of the testimony. In this case appellee sought to recover on the ground that the cattle did not arrive for the Tuesday's market, July 18th, when the market was higher than the day following, Wednesday, July 19th, at which time the market had declined. They sue for loss on account of having to sell on the lower market caused by unreasonable delay, also loss in weight and appearance, affecting the merchantable value, all of which was occasioned by the delay. Mr. Arnett, one of the appellees, testified:

"The average or ordinary time for making the trip from Yellowhouse, the initial point, to Kansas City, the destination, was from 60 to 70 hours. That, had the cattle arrived at Kansas City at 8:10 a. m., July 18, 1916, they would have arrived in substantially the average running time, and would have arrived in time for Tuesday's market."

C. M. Adams and C. L. Lebow, who were the salesmen for the commission company selling these cattle, show that they sold the cattle, part of them July 19th, part July 20th, and part July 24th; that the cattle arrived at the Kansas City stockyards at 8:10 a. m., July 19th, and were unloaded as soon as the cars were set at the unloading chute, and according to the usual custom turned over, between 8:10 a. m. and 9 a. m., to the National Live Stock Commission Company.

The appellant introduced part of the citation served on it in this case, showing by the allegations in the petition that the cattle arrived at 8:10 a. m., Tuesday, July 18, 1916. The original petition filed in this case so alleged when it was filed, but afterwards the plaintiff, by consent, wrote over the typewritten "18" the figures "19" with a pen. There is no showing how the allegation as to this date occurred in the original pleading. The appellees testified they did not accompany the shipment, and had no caretaker with them. However, the shipping contract shows there was a caretaker, and that an attendant's agreement and transportation certificate was issued to one D. Ward, which named party was with the cattle at Wellington, Kan., and made a request to send the cattle forward on train No. 30. The appellant shows in this case by the conductor in charge of the train when it was loaded at Yellowhouse and left that station by his testimony, giving the hour and minute of the start and the record kept by him of his run, and so on through with the entire shipment by station agents, train dispatchers, and by parties in control of the yards where the cattle were unloaded, fed, and watered, and by every conductor who handled the cattle from start to finish. These records all show, with only slight differences in some of the records testified to, the exact hour and minute of the arrival and departure of the train on each division and at each of the yards. They show the delays, the time consumed, and the cause of the delays.

We have carefully gone over this record and have been unable to detect any material error. The time consumed in making this trip was less than the usual or ordinary time taken, as admitted by the appellees and testified to by all of the witnesses. They show no such unusual delay. The last division ends at Argentine. The cattle arrived there at 5:50 a. m., July 18, 1916. It was five miles from there to the stockyards. The engine foreman who handled the cars from Argentine to the stockyards took charge of the cattle at 6:45 a. m., July 18th; arrived at the stockyards at 8:10, July 18th, and unloaded at 8:30 a. m., July 18th, as testified to by the engine foreman, and as shown by his records. The shipping master of the Kansas City Stockyards Company testified that the cattle were unloaded at 8:10 a. m., July 18th, and that they were delivered to the Live

Stock Commission Company. He claims to have testified from his records. The two witnesses of appellee, testifying as to the arrival of the cattle on July 19th, do not show they had any connection with the cattle, except in their sales. Just how they learned of the arrival is not shown. We do not believe their general statements should outweigh the testimony of those who handled the cattle and delivered them. As it was shown, it was their duty to make a complete record of every movement. The only way the jury could have arrived at the conclusion they did was to find the witnesses had falsified their records, or sworn falsely what they entered on them.

We can find nothing in the records which will justify such conclusion. All the testimony was by deposition for both parties as to the time of the arrival. We do not feel that the statement of men from their mere recollection as to the date, who had not been connected with the cattle, except to sell them, should outweigh the almost perfect record of this run, kept by the conductors, train dispatchers, and others. In addition to this, plaintiff's original petition alleged the arrival of the cattle at 8:10 a. m., Tuesday, July 18th, and, while they afterwards changed the date in the original petition from "18" to "19", they never in the original petition changed the day of the week, Tuesday, and not until the amendment was filed changed it to 8:10 a. m., Wednesday, July 19th. This court, as a rule, where there is evidence to support a verdict, will not disturb it; but to our mind the finding of the jury is so manifestly against the overwhelming weight of the evidence we cannot find it consistent with our duty to permit the verdict and judgment to stand. Patrick v. Smith, 90 Tex. 267, 38 S. W. 17.

[5] The eighth assignment assails the verdict for the reason that there was no evidence of the weight of the cattle, after the account sales was withdrawn from the consideration of the jury, on that fact, by the court in his charge. Mr. Arnett gave it as his opinion the cattle would average 500 pounds per head when they started. He gave the shrinkage which would occur on a usual or ordinary run, and what it would be for a delay, such as he claimed. From this the jury could determine the weight of the cattle upon arrival, and the market price shown in their condition as they did arrive. From all this evidence the jury could approximate the damages. We think, however, the weights, if possible, should be shown by more certain evidence than the opinion of a witness. We would not feel justified in reversing on this ground alone.

For the reasons above given, the judgment will be reversed, and the cause remanded.