## PAYNE v. WHITE HOUSE LUMBER CO.
### (No. 1750.)

(Court of Civil Appeals of Texas. Amarillo. May 11, 1921. Rehearing Denied June 1, 1921.)

1. Railroads ⊂⇒5½, New, vol. 6A Key-No. Series—Substitution of federal agent under Transportation Act.

The substitution of federal agent appointed under Transportation Act 1920 as defendant in a suit against the Director General and a railroad company, though made without the notice ordinarily required by the state practice, is sufficient where such notice is waived by an appearance by the attorneys who signed the pleadings for the Director General and represented the agent at the trial, making objection and taking bills of exceptions.

2. Evidence ⊂⇒44—Judicial notice that Director General of Railroads was succeeded by Agent of President.

Where suit was brought against a railroad company and the Director General of Railroads, who was thereafter, before trial of the case, dismissed and succeeded by the Agent of the President under Transportation Act 1920, the

court will take judicial notice of the fact that the latter was agent for the company prior to the trial and that the former Director General was no longer entitled to represent the government at that time.

3. Commerce ⊂⇒89—District Court has jurisdiction of suit to recover demurrage and excess freight charges made in violation of Interstate Commerce Commission rule.

The district court has jurisdiction of a suit to recover excessive freight charges and demurrage paid under protest, though the initial jurisdiction is with the Interstate Commerce Commission to fix and establish rules and rates; the suit being to recover charges demanded and paid in violation of the Interstate Commerce Commission's rule fixing demurrage charges and freight rates, and not to assail the rule as unreasonable.

4. Evidence ⊂⇒489—Testimony as to what constituted market value admissible where witness testified he knew the market value.

In an action against a railroad for damages for shortage between weights at points of shipment and destination of certain cars of coal delivered to consignee, testimony of a witness, that the market value of the coal was the price at the mines plus carriage and tax and giving the amount at each place on each shipment, was admissible where he first testified that he knew the market value.

5. Action ⊂⇒48(3)—Causes of action for excessive freight and demurrage charges and damages for shortage of coal properly joined.

Causes of action against a railroad for excessive freight charges, demurrage charges wrongfully exacted, and damages for shortage of coal delivered, were properly joined, since all grew out of contracts of shipment and were not ex delicto, but ex contractu, and between the same parties.

6. Witnesses ⊂⇒255(7)—Testimony from records made by witness was admissible, though records themselves were exhibits and witness had no independent recollection of facts.

In an action against a railroad company for damages for shortage of coal delivered to plaintiff, testimony of the manager of plaintiff's business at the place of delivery, as to the weight of two cars of coal upon their arrival, was admissible, though witness testified from his records which were attached to his deposition as an exhibit showing the weight of the two cars, where his duties were to keep correct records of such transactions, the cars were unloaded under his direction, and he weighed the coal and made the entries at the time of unloading and identified the weight sheets from which he testified as original records from his office, although he had no independent recollection of the weights.

7. Witnesses ⊂⇒255(7)—Testimony from original sheets made by witness admissible, though book in which same kept not offered in evidence.

Where a witness, in an action to recover from a railroad company for shortage of coal

delivered to plaintiff, testified as to the weight of certain cars delivered, from certain weight sheets made by him at the time, the fact that the book in which the sheets were kept was not offered in evidence did not render them inadmissible; only the entry in the book relevant to the issue being admissible.

**8. Witnesses ⬳255(7) — Testimony as to weight of cars of coal weighed and entered in books by witness at time of unloading admissible, where witness' superior testified as to correctness of entries.**

In an action to recover from a railroad company for shortage of coal delivered to plaintiff, testimony of a witness as to the weight of part of two cars delivered was admissible, where the weights were entered by him in the books at the time of unloading, which was part of his duty, and plaintiff's general manager testified as to the correctness of the entries made.

**9. Evidence ⬳376(1)—Testimony of witnesses as to weight of cars of coal admissible along with original scale tickets showing weights of cars and coal in pounds.**

In an action against a railroad company to recover for shortage of coal delivered to plaintiff, testimony of witnesses who weighed out the cars of coal at the initial points of shipment, that in the line of their duties they kept a record of the weights of the cars when empty and loaded and that each attached the original scale tickets, which corresponded with the entries on their books, was admissible, as were the scale tickets themselves, upon which the weights, gross, tare and net, were stamped when the weighing was done; the figures on the tickets being construed to mean pounds and not tons.

**10. Carriers ⬳100(1) — Though cars were bunched owing to washouts, carrier, though without fault, not entitled to demurrage for free time allowed shipper in such case.**

Though cars were bunched through no fault of the carrier but owing to washouts over which it had no control, it could not collect demurrage for the free time which the rules grant the shipper under such conditions, making it impossible to get cars for loading and unloading, and which demurrage the rules also stipulate shall be refunded.

**11. Appeal and error ⬳926(1)—Where court admitted evidence on issue after sustaining exception, and petition not amended, it is presumed court changed mind.**

Where, in an action to recover demurrage charges paid under protest, the court admitted an expense bill to show the amount of demurrage and rendered judgment therefor after having sustained exceptions thereto, and that portion of the petition suing for demurrage was not stricken out, it will be presumed on appeal that the court changed his mind.

**12. Carriers ⬳135—Where no objection to bills showing weight of car of coal delivered to consignee, no error in allowing amount stated therein.**

In an action to recover for shortage of coal delivered to consignee where there was no ob-

jection to the introduction of a freight bill and expense bill showing the weight of a car of coal, the court was justified in allowing the amount therein stated.

**13. Carriers ⬳134—Evidence held to support judgment for shortage in coal delivered, though there was probable chance of loss or error in ascertaining weight thereof.**

Evidence *held* sufficient to support the amount of a judgment for shortage in coal delivered to consignee due to its having been shipped in open cars to save money in loading and unloading, though there was probable chance of loss or error in ascertaining the weight thereof.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Action by the White House Lumber Company against Walker D. Hines, Director General of Railroads, and the Panhandle & Santa Fé Railway Company, wherein John Barton Payne was substituted as defendant. Judgment for plaintiff, and defendant John Barton Payne appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, and Hoover, Hoover & Willis, of Canadian, for appellant.

Sanders & Jennings, of Canadian, for appellee.

HUFF, C. J. The appellee lumber company, a corporation, originally filed its petition in the district court, December 2, 1919, against Walker D. Hines, Director General of the United States Railroad Administration, and Panhandle & Santa Fé Railway Company. It sued for damages for alleged shortage between weights at point of shipment and weights at destination of a number of cars of coal shipped from points in Colorado to its offices at White Deer, Pampa, Miami, and Canadian, Tex.; the total shortage alleged to be 21 tons, made up of several thousand pounds shortage on each of the cars named, and alleged to have been the market value of $10 per ton, or a total of $210. All of said shipments occurred during the year 1918. Also it is alleged and claimed the right to a refund of various demurrage charges paid under protest during the year 1918 on a number of different shipments of coal and lumber at destination, Canadian, Tex., alleging that the cars of said shipment were delayed in transit and delivered in such numbers as to exceed the consignee's daily rate of shipment, and also that they exceeded appellee's facilities for unloading within the free time, but for which the demurrage would not have occurred. The total amount of damage claimed was $643.25, with legal interest on same from date of collection.

It is also sought to recover for an overcharge for freight on a car of lumber from Calcasieu, La., to White Deer, Tex., in the

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sum of $185.22 and legal interest from date of payment of the overcharge. The latter shipment was made during December, 1917, and arrived during January, 1918. Walker D. Hines filed a plea in abatement, based, first, upon the ground that as to the claim for demurrage and overcharge of freight such matters were fixed by rules of the Interstate Commerce Commission of the United States, and that such Commission has jurisdiction to determine the correctness thereof, and that the district court of Hemphill county did not have jurisdiction of the suit to recover the same, in the absence of a showing in plaintiff's petition that any application had been made to the Interstate Commerce Commission for relief, and further that the matter complained of in the suit occurred while the Panhandle & Santa Fé Railway Company was under the control of the United States Railway Administration, and that at the time of filing the plea, August 18, 1920, such administration was represented by John Barton Payne, Walker D. Hines having been dismissed, and that John Barton Payne should be made a party to the suit, for which reason he asked that the case be continued.

Such plea of abatement having been overruled and exceptions noted, defendant Hines then filed his original answer, in which he excepted to the plaintiff's petition on various grounds and pleaded that the Panhandle & Santa Fé Railway Company was not responsible; that the Interstate Commerce Commission had jurisdiction over the claim for freight and demurrage and that the claim should have been first presented to such Commission; that the cars being in a group arose from the act of God in the nature of an unprecedented washout of the track which caused the cars to accumulate at points without any negligence on the part of defendant; that the coal was shipped in open cars, such as would naturally permit some of it to escape therefrom; that such shipments were for the convenience of the public to save money in loading and unloading, and that the Regional Director had made a ruling that the administration would not pay for loss and damage when so shipped except in certain instances arising from fire, theft, etc. He also pleaded misjoinder of causes of action in that the freight, demurrage, and shortage of coal would require three entirely different adjudications; also, that the shortage would be due to natural causes, such as shrinkage en route. The plaintiff below, appellee here, by supplemental petition, pleaded that since the institution of this suit the President of the United States has appointed John Barton Payne as representative of all railroads under government control, to succeed Walker D. Hines, the appointment being in virtue of an act of Congress, which provided specifically that at the time of such appointment, and

by reason thereof, no pending suit should abate against any carrier originally under government control, and that it then made substitution of Payne in the place of Hines, in accordance with the provision of the act, and prays for judgment in accordance with the original petition. The court substituted Payne by an order entered of record at the same term at which such supplemental petition was filed. No citation or notice to Payne was issued, and defendant Hines excepted to the action of the court. The case was tried before the court without a jury, and the court rendered judgment against John Barton Payne as Federal Agent, for $974.59, with interest thereon from September 1, 1920. John Barton Payne filed a motion for new trial and an appeal bond and brings this case before this court for review.

[1, 2] The first, second, and third assignments of error relate to the action of the court in rendering judgment against John Barton Payne as Agent of the Railroad Administration, for the reason that he had no notice and could not be substituted as a matter of law without being cited, or having notice served upon him, and that the court erred in overruling defendant's motion that the cause be continued for the purpose of citing appellant. The record shows in this case that John Barton Payne, Agent, was substituted for Hines by the supplemental petition and order of court before entering upon the trial of the case. Hines and the railroad appear to have been dismissed by the action of the appellee in filing its supplemental petition. The same attorneys that represented Hines and the railway company represented Payne in his motion for new trial and on his appeal in this case. The case seems to have been fully developed in the trial court on the facts, and counsel representing Payne at that time or at this time show that they represented defendant in the trial court, making objections and taking bills of exception to the action of the court in its various rulings, however, signing it as attorney for Hines and the railway company, except in the motion for new trial. There is a bill of exception in the record taken by the attorneys for Hines, reciting the various facts above set out with reference to the substitution of Payne for Hines, without citation or notice, and stating that the attorneys did not appear for Payne but for Hines. However, the trial court qualifies the bill by stating that if counsel for appellant stated that they were not appearing for Payne in the trial, he did not hear it, and the judgment recites that—

"Both plaintiff and defendant appeared by attorneys, announced ready for trial, and a jury being waived, all matters of fact as well as of law were submitted to the court. The court having heard the pleading read, the evidence offered, the argument of counsel, and being ad-

vised as to the law, here renders judgment and decrees in said cause."

To reverse this case upon the assignments made would be upon a bald technicality. This court, in the case of Hines v. Collins, 227 S. W. 332, rather expressed the opinion that in the substitution of the Agent of the Government, under the Transportation Act of 1920 (41 Stat. 456), service upon him might be required. However, the case was not reversed upon that ground, but upon others; but we were then of the opinion that possibly under our practice such notice or service would be required. There seems to be a diversity of opinion among the courts, as to the meaning of that act, or, in other words, the method by which the agent should be made a party. We call especial attention to the case of Gundlach v. Railway Co. (Wis.) 179 N. W. 985, and the case of Kersten v. Hines (Mo.) 223 S. W. 586. These cases seem to hold that it would be sufficient simply to substitute Payne for Hines in the judgment without notice. However this may be, we regard the question as one of the practice for determination by the forum where the litigation is pending, and that the transition from Hines to Payne as party does not abate the suit and does not affect the rights of the complainant, but preserves his rights, and therefore any method by which Payne may be made a party, satisfying the practice in the court where the suit is pending, we presume would be sufficient to continue the litigation to final judgment in the name of Payne. In this state, while notice or citation is ordinarily required to bring in a new party, yet such notice or citation may be waived by making an appearance, and we think under the facts of this case that the court was justified in holding that the attorneys, whose names were signed to the pleadings for Hines, were in fact the attorneys representing John Barton Payne, Agent, under the Transportation Act. We take judicial notice of the fact that he was the agent for the company, some time prior to the trial of this case in the lower court, and that Hines was no longer a Director General or entitled to represent the government at that time. If Hines was dismissed from the case by the appellee in a supplemental petition, and by order of the court, it was rather a strange and anomalous procedure for him to still remain in the trial court and make a complete defense to the cause of action alleged as a party to the suit, when he was no longer a party, and that John Barton Payne should then take advantage of his bills of exceptions and his objections to the testimony and to the action of the court in rendering judgment and present the very same objections to this court for review and at the same time contend that he had not made an appearance in the trial court. To hold that the trial court was not justified in treating appellant as having appeared in the court below, would be to do so in the face of almost a conclusive presumption that he had then made his appearance, and to set aside the findings of the court in the judgment that the defendant did appear by counsel and answer would be in the face of the record. We believe the assignments should be overruled. Smith v. Smith, 123 S. W. 198; Railway Co. v. McCarty, 29 Tex. Civ. App. 616, 69 S. W. 229; York v. State, 73 Tex. 651, 11 S. W. 869; 4 C. J. pp. 1362, 1364, 1365, 1340, 1341; Morris v. Anderson, 152 S. W. 679 (6).

[3] The fourth and sixth assignments deny the jurisdiction of the district court to determine the claim with reference to demurrage and freight charges and assert that the jurisdiction is with the Interstate Commerce Commission. It is asserted that the petition on such claim involved a construction of the rules of the Interstate Commerce Commission and for that reason the district court had no jurisdiction. This is not a suit attacking the rule of the Interstate Commerce Commission fixing demurrage charges or the freight rate as being unreasonable, but is a suit to recover charges demanded and paid in violation of the rule. The petition might have been more specific, but it is apparent the rule or rate fixed by the Commission is not assailed, but it was the act of demanding and receiving demurrage and freight not authorized to be collected under the rules filed with the Interstate Commerce Commission. The initial jurisdiction, of course, is with the Commission to fix and establish rules and rates for terminal charges, or other transportation charges. The petition does not present an administrative question upon which the road's liability depends and does not involve a question of the reasonableness of a practice in interstate commerce, of which the Interstate Commerce Commission has the jurisdiction. We think in an action of this character the only question between the shipper and carrier is what was the legal right of the carrier under its rules and regulations to collect demurrage, and not what they should have been. U. S. Compiled Statutes, § 8572; Railway Co. v. Lewellen, 192 Fed. 540, 113 C. C. A. 414; Railway Co. v. Sonman Shaft Coal Co., 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188; U. S. v. Pennsylvania Ry. Co., 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251; Railway Co. v. Solum, 247 U. S. 477, 38 Sup. Ct. 550, 62 L. Ed. 1221; Gimbel v. Barrett (D. C.) 215 Fed. 1004; Railway Co. v. Rogers, 75 W. Va. 556, 84 S. E. 248.

[4] The fifth assignment is based on the admission of the testimony of R. H. Stone as to the market value of coal. The witness in effect stated the mine prices of the coal, plus the carriage and tax, was its market value at the various places of destination. The appellant contends that this was not evidence

of its market value. The witness was asked if he knew the market value, and answered, "Sure." He then stated it was the price at the mines, plus carriage and tax, giving the amount at each place on each shipment. We think there was no reversible error in admitting this evidence. Railway Co. v. Hapgood, 201 S. W. 1040; Fowler v. Davenport, 21 Tex. 635, 636.

[5] The seventh assignment urges error in refusing to sustain an exception to the petition, on the ground of misjoinder of causes of action. All three causes grew out of contracts of shipment, and are not ex delicto but ex contractu, and between the same parties. Elder v. Railway Co., 105 Tex. 628, 154 S. W. 975; Railway Co. v. Dowe, 70 Tex. 5, 7 S. W. 368; Harless v. Haile, 174 S. W. 1023(2).

We think no reversible error is shown by assignments 8 and 9. We do not believe it to be necessary to discuss these assignments, which present exceptions to the petition.

[6] The tenth assignment urges error in admitting the testimony of J. H. Ford. The witness testified to the weight of two cars of coal upon their arrival at Miami, and the difference is shown by the invoice and the weights of each car.

Assignment 11 asserts error in admitting an exhibit to Ford's deposition, purporting to show the weight of the two cars of coal. To the oral statement appellant objected that the witness was wholly dependent upon his records and that the records were attached to his deposition and were the best evidence to the exhibit to the deposition because the witness did not remember the weights; that he kept a book and sheets which were merely detached from the original books and only a part of the record, and there was no testimony that he was in the habit of keeping correct records. This witness was the manager of the business at Miami, and his duties were to keep correct records of all business transactions, such as weighing coal, keeping books, etc., and the cars were unloaded under his direction, and he weighed the coal as it was unloaded and made the entries at that time. He said he could only give the correct weight from the sheets and pages; that he examined the weight sheets attached to the interrogatories, which were original records from his office at the time he was in charge of the same. "I find those figures are correct." He had in his hands the original sheet of the weights, names of the drivers, where unloaded, etc. The sheets were in his handwriting and were made by him at the times stated in the sheet. The records, he stated, were then in his hand and "absolutely correct for the reason that I entered it at the time the weights were made and I know them to be correct." These sheets the evidence shows were on what is known as detachable sheets, which are kept in book form. The evidence shows witness, at the time his deposition was taken, was residing in Arizona. We think, although the witness stated he had no independent recollection of the weights, that upon examination of a memorandum made by him at the time the coal was weighed, that he could use the same for the purpose of refreshing his memory, and when he states they were absolutely correct he could give the weights, as shown, and there was no error in admitting that testimony. Railway Co. v. Startz, 42 Tex. Civ. App. 85, 94 S. W. 207; Railway Co. v. Blanton, 63 Tex. 109; Enc. of Evidence, vol. 14, p. 725c; 17 Cyc. p. 387, et seq. We think this testimony admissible, as he testified not only from a memorandum made by himself at the time, but also the original entry on the sheets identified by the witness.

[7] The fact that the book in which the sheets were kept was not offered in evidence did not render the sheets inadmissible. Certainly the appellant does not contend the entire book should be offered. It was only the entry in the book relevant to the issue which is admissible. This court has expressed its views on this character of evidence in the case of Schaff v. Holmes, 215 S. W. 864; Railway Co. v. Arnett, 219 S. W. 232 (1 and 2). In this case the sheets offered were the first permanent original entries and not copied which could have been offered if the books or sheets had been out of the jurisdiction of the court or possession of the party offering them. Railway Co. v. Dilworth, 95 Tex. 327, 67 S. W. 88; Enc. of Evidence, vol. 2, p. 347.

[8] The twelfth, thirteenth, and fourteenth assignments present the same objection to the testimony of the witness W. M. Craven to cars of coal weighed by him for appellee at Pampa, Tex. His testimony was as to the weight of six cars, four of which he weighed and entered himself, and part of two cars, the other part of which were weighed by Robert Coleman. As to that weighed and entered by himself the testimony was admissible for the reasons given by us in considering the tenth and eleventh assignments. As to that weighed by Coleman, the testimony shows the coal weights by Coleman were entered in the books at the time of unloading, which was part of Coleman's duty. Mr. Stone, the general manager for appellee, testified as to the correctness of the entries made and that the books were correctly kept, and we think sufficiently verified the book entries as being kept correctly to admit the entries by Coleman. Part of appellant's objection goes to the weight of the testimony, which we think, after an examination by us, did not go to its admissibility. There was no error in admitting the testimony of Mr. Cravens, and the sheets attached to his deposition.

The fifteenth, sixteenth, seventeenth, eight-

eenth, and nineteenth assignments are to the action of the court in admitting the testimony of the witnesses Voyles, Froelich, and Moss and sheets of original entry showing the weights of cars weighed by them and entered on such sheets in the course of their respective duties at the time and place of weighing the same. These assignments are overruled for the reasons given in our consideration of the tenth and eleventh assignments.

The twentieth assignment presents no reversible error and will be overruled without further discussion.

The twenty-second, twenty-third, and twenty-sixth assignments present no reversible error, and nothing will be gained by discussing them or giving reasons for overruling them.

[9] The twenty-first, twenty-fourth, twenty-fifth, and twenty-seventh assignments present as error the action of the court in admitting the testimony of John Lane, Howard J. Murray, and Richard Evans, who, the evidence showed, weighed out the cars of coal at the various initial points of shipment of the various cars in which a shortage is asserted. These witnesses show that in the line of their respective duties they kept books of record and weighed out the cars when empty and loaded and kept a record of the two different weights. They each attached the original scale tickets and compared the original scale tickets and entries on their books and testified they correspond. The original scale tickets are attached to their depositions. It seems to be the contention of appellant that these tickets do not show the amount of coal in each car. As illustrating:

One of the tickets shows:   129,000   gross
                           44,300   tare
                             ———
                             847    net.

It is urged it cannot be determined whether 847 referred to tons or pounds. The court considered the remainder to be 84,700 pounds, and not tons. The difference between the gross sum, less the tare, is 84,700 pounds. Appellant seems to make the contention that the tickets ought to specify whether it was pounds or tons. If it was tons the judgment of the court has certainly given the appellant the benefit in holding it was pounds. The witnesses show this was the correct weight of the cars, gross and tare. It would, it seems to us, be imputing to the trial court a finding that there was 847 tons on the car, or that the car weighed 44,300 tons and when loaded weighed 129,000 tons, not warranted by the evidence or justified by reason. "Gross" and "tare" have well known meanings in commercial transactions and within the common meaning of the terms as understood by the average man. See Webster's definition of the terms. It is manifest the

weigher only set out the thousands and hundreds, not giving the units or tens. If he had not done so, it is only a matter of subtraction and easily made. It is shown by the witness that the weights, gross and tare, were automatically stamped on the tickets when the weighing was done. The original deposition with the scale tickets attached are sent up for our inspection. The figures so stamped are dim, but can be discerned we think, and will support the trial court's judgment. At any rate, we apprehend the trial court's eyes are as good as ours. The weight of each car, giving its number, is given in the freight bills and in the expense bills, which were not objected to and introduced in evidence, and they correspond with the weights on the tickets. The tickets, together with the testimony of the witnesses, were admissible. Appellant's objections we really think only go to the weight of the evidence, and in this particular we are not able to say the trial court misinterpreted it.

[10-11] The twenty-eighth and twenty-ninth assignments are to the effect the court erred in admitting the expense bill to show the amount of demurrage and in rendering judgment for demurrage after having sustained exceptions thereto, and that thereafter there was no amendment filed. The plaintiff did not sue for overcharge on demurrage, but sued for the demurrage paid under protest, on the ground that it was not liable to pay demurrage charges. The appellant alleged that the cars were bunched, but that it was through no fault of the railroad, but owing to washouts, over which it had no control. It seems exceptions to the petition, Nos. 4 and 5, were sustained by the trial court and no amendment was filed by appellee. These exceptions appear to be to the items for freight and demurrage on the ground that they do not allege the freight of the shipment and the rate per hundred pounds, and that the allegations concerning overcharges of freight and demurrage, because the published tariff rates and rules are not set out and do not show the true rate to be charged by law. As to the demurrage there was no recovery sought or had for overcharge, but on the ground that there was collected demurrage when none was due or should have been collected. The demurrage rate is allowed for unloading after 2 days or 48 hours, free time, at the rate of $2 per day for the first five days; $5 for the sixth and each succeeding day. The rules provide when as a result of the act or neglect of the carrier cars are bunched at the original point, in transit, or at destination, and delivered by the carrier line in accumulated numbers in excess of daily shipment, the consignee shall be allowed such free time as he would have been entitled to had the cars been delivered in accordance with the daily rate of ship-

ment. No demurrage shall be collected under these rules for detention through named causes, and demurrage charges assessed or collected under such conditions shall promptly be canceled or refunded, when because of high water or snowdrift it is impossible to get cars for loading or unloading, during the prescribed free time. This provision is part of the causes named. It will be observed that appellant pleaded on account of high water and washouts the cars were bunched at destination. This being true, it was not entitled to collect demurrage for the free time which the rules granted the shipper under such conditions. This was the demurrage collected which the rules stipulated should be refunded and, as we understand the petition, was the demurrage sought to be recovered in this case. The trial court, if he understood the exception when made, evidently reconsidered his action as is manifest, by admitting the evidence as to the demurrage charges demanded and collected, and in rendering judgment for that sum. It seems the record entry was not corrected in that particular in the trial court. That portion of the petition suing for demurrage was not stricken out but is here before this court. Under such circumstances we think we are justified in holding that the trial court changed his mind with reference to the ruling on the exceptions. Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S. W. 39; Matheson v. C. B. Live Stock Co., 198 S. W. 641, paragraph 5, and authorities cited.

[12] Assignments 31 and 32 assert there was no evidence of the weight of two certain cars at the point of shipment. The weight of one of the cars was proven by Lane. It would seem appellant has his number wrong in his assignment, and therefore his assignment and propositions are not well taken. The other car, the weight is shown by the freight bill and expense bill, and these instruments show the weight of the car of coal. In the absence of an objection to this testimony, for such purpose the trial court probably was justified in allowing the amount therein stated.

[13] The thirty-third assignment assails the judgment for damages for loss of coal. The appellant seems to think, because there may have been or was a probable chance of loss or error in ascertaining the weight of the coal lost, that the court ought not to have rendered judgment for $187.50. We believe the evidence sufficient to support the judgment of the court.

The judgment will therefore be affirmed.

## On Motion for Rehearing.

It is insisted by the appellants strenuously that we erred in holding that the trial court, from the record, was justified in holding that appellant as agent for the government appeared in the trial court. We see no reason for changing our ruling on that point. After the present act of Congress took effect, Hines was appointed as agent of the government and as such represented it in this action, and upon his removal Payne was appointed. The government was represented under the last act through its then agent, Hines, and by order of the trial court Payne was substituted as his successor. We think the record sufficient to show the attorneys who represented Hines were the attorneys for the government and they continued to represent it through Payne. See Payne v. Stockton (Ark.) 229 S. W. 44.

The appellant questions our conclusion as to the effect of Stone's evidence on market value, under the fifth assignment of error. The question was asked him:

"Did that character of coal have a market value at the various places of destination, as shown there at the time it was delivered? Did it have a market value there? A. Sure. It has the market value of the mine cost plus freight. Q. Do you know what the market value was? A. Yes. I know this way that coal is something—"

The court then asked some questions. As we construe his answer to the court, the market value of the coal was the mine price and that his company was charged whatever price was in effect at the time of shipment. The witness in effect stated the coal had a market price, which was the price paid plus the freight, and when asked if he knew said, "Yes," and then proceeded to show how he knew. The answers were sufficient to permit him to give the market price. How he knew was only material as to the weight of his evidence. Because the market price happened to be the same as cost and carriage did not negative the fact that that was not the market price. This witness was an extensive dealer in the commodity at the various points of delivery, and evidently was fully acquainted with the market values. Certainly cost and carriage did not injure the appellant; there was no profit charged; that is, its value was not fixed at the selling price to the consumer. We think the court was justified in admitting the testimony of the witness as to the value of the coal lost.

The motion for rehearing will be overruled.